STATE OF NEBRASKA, APPELLANT,
v. HAROLD D. CONNICK, JR., APPELLEE.
557 N.W.2d 713

Filed December 3, 1996.    No. A-96-138.

Gary E. Lacey, Lancaster County Attorney, and Andrew Jacobsen for appellant.

John M. Lefler for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and MUES, Judges.

HANNON, Judge.

The State brings this error proceeding under Neb. Rev. Stat. § 29-2315.01 (Reissue 1995) from a ruling of the district court reversing the county court's conviction of Harold D. Connick, Jr., for third-offense driving while under the influence of alcohol (DUI), in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 1993). In county court, Connick moved to suppress all evidence on the grounds that the conservation officer employed by the Nebraska Game and Parks Commission who stopped and arrested him was without the authority to do so. The county court overruled the motion. Connick saved this alleged error and appealed to district court. The district court concluded that the conservation officer was without the authority to detain and arrest Connick and therefore that the evidence obtained as a result was not admissible. The district court ordered the conviction reversed, the sentence vacated, and the charge dismissed. We conclude that the conservation officer did have the statutory authority to detain and arrest. Therefore, we sustain the State's exception and remand the cause to the district court with directions to reinstate and affirm the conviction and sentence of the county court.

## I. FACTUAL BACKGROUND

On June 25, 1994, a conservation officer with the Game and Parks Commission was driving westbound on West Denton Road in Lancaster County when he met a pickup truck that he observed being driven erratically. It was being driven with its passenger-side tires on the shoulder, creating a lot of dust. The conservation officer turned his vehicle around and followed the truck for approximately 4 miles. During that time, he witnessed

the truck being driven on the shoulder twice and crossing the centerline three times. At one point, the pickup was so far to the left of center that the passenger-side tires were touching the centerline. The conservation officer activated his emergency lights and continued to follow the truck. The truck did not stop. At one point, the officer pulled alongside the truck and motioned for it to pull over. The driver of the pickup waved and kept going until he stopped for a red light. The conservation officer stopped, got out of his vehicle, walked over to the pickup, reached into the pickup, and turned the ignition off. He then requested that the driver give him the keys and his operator's license. The driver of the pickup was Connick. The conservation officer detected the odor of alcohol, and, when asked by the conservation officer if he had been drinking, Connick admitted that he had had a couple of beers. Upon request, Connick went to the conservation officer's vehicle.

While following the pickup, the conservation officer had requested the assistance of the Lancaster County Sheriff's Department. While the conservation officer and Connick were sitting in the conservation officer's vehicle waiting for a deputy sheriff to arrive, the conservation officer continued to observe the odor of alcohol about Connick. After approximately 15 minutes, a Lancaster County deputy sheriff arrived on the scene. The conservation officer then related his observations to the deputy. Upon speaking to Connick, the deputy detected the odor of alcohol about Connick, that Connick's eyes were red, and that his speech was "lethargic." The deputy then requested that Connick perform several field sobriety tests, which the deputy concluded that Connick did not pass. The deputy radioed for a Lincoln police officer to come to the scene to administer a preliminary breath test, which was done, and Connick failed the test. He was then formally arrested and transported to jail.

The police officer then read the administrative license revocation advisement form to Connick, prior to administering a chemical breath test. The breath test showed Connick had more alcohol in his system than is allowed by law.

## II. PROCEDURAL BACKGROUND

A complaint was filed charging Connick with third-offense DUI pursuant to § 60-6,196. Connick filed a motion to suppress

the evidence obtained by the stop. At the suppression hearing, the conservation officer, the deputy, and the police officer testified. Connick argued that the conservation officer did not have authority to stop and detain him and therefore that the stop, detention, and arrest were illegal. He did not challenge the evidence upon other grounds. The county court overruled the motion without making any specific findings. The parties then agreed to a bench trial, with exhibit 1 being the only evidence. The defense renewed its objection, making the same argument it had made at the suppression hearing. The objection was overruled, and exhibit 1 was introduced without further objection. It is a 14-page document containing the following: the citation given to Connick the night of the incident, incident reports filed by the conservation officer and the deputy, a preliminary breath test advisement form, an administrative license revocation advisement form, a checklist for using the Intoxilyzer, the Intoxilyzer results, a DUI interview report, and a supplementary report by the deputy containing a narrative of the events that night as observed by the deputy. Connick saved any error raised for appeal.

The county court found Connick guilty of the underlying DUI offense, and after an enhancement hearing, sentenced him to 120 days in jail, fined him $500, and ordered his operator's license suspended for 15 years. Connick appealed to the district court, alleging that the county court erred in finding that he was properly advised of the consequences of taking or refusing to take the chemical breath test and also alleging that the conservation officer did not have authority to stop and detain him.

The district court found that the conservation officer acted outside the scope of his jurisdiction and thus that his detention of Connick constituted an illegal arrest. It also found, pursuant to the holding in *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995), that the trial court erred in receiving the results of the breath test. After reaching these conclusions, the district court ordered the trial court to reverse the conviction, vacate the sentence, and dismiss the charge. The State then filed this error proceeding.

### III. ASSIGNMENTS OF ERROR

The State has alleged six assignments of error, which restated and summarized are that the district court erred (1) in finding

that the holding in *Smith v. State, supra*, is applicable to a criminal proceeding and (2) in finding that the conservation officer acted outside of the scope of his jurisdiction.

## IV. STANDARD OF REVIEW

In regard to a question of law, an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *State v. Dake*, 247 Neb. 579, 529 N.W.2d 46 (1995); *State v. Dean*, 246 Neb. 869, 523 N.W.2d 681 (1994).

## V. DISCUSSION

### 1. POWER OF CONSERVATION OFFICER TO ARREST

The controlling question in this appeal is the powers that are granted to conservation officers by the Nebraska Revised Statutes. The several statutory provisions that purport to grant powers to conservation officers specifically and to peace officers generally and the definition of a peace officer cause some difficulty in determining what power, if any, the statutes give conservation officers to arrest for traffic offenses outside of state lands. Connick argues that the 1965 legislative history of Neb. Rev. Stat. § 29-829 (Reissue 1995) clearly establishes that the Legislature never intended for conservation officers to have jurisdiction over anything but the Game Law. In *State v. Tingle*, 239 Neb. 558, 477 N.W.2d 544 (1991), the defendant challenged the authority of a city police officer to arrest the defendant outside of the territory of the city the officer served. In *Tingle*, the Supreme Court held that a peace officer does not have authority to arrest someone outside of the boundaries of his or her jurisdiction unless the peace officer is authorized by statute to do so.

In 1994, in response to the effect of the holding in *Tingle*, the Legislature adopted 1994 Neb. Laws, L.B. 254, § 1, now codified as Neb. Rev. Stat. § 29-215 (Reissue 1995). Section 29-215, which became effective March 1, 1994, provides in part:

> (1) *Every sheriff*, deputy sheriff, marshal, deputy marshal, police officer, or *peace officer as defined in subdivision (15) of section 49-801* shall have the power and authority to enforce the laws of this state and of the polit-

ical subdivision which employs the law enforcement officer or otherwise perform the functions of that office anywhere *within his or her primary jurisdiction. Primary jurisdiction shall mean the geographic area within territorial limits of the state or political subdivision which employs the law enforcement officer.*

(2) Any such law enforcement officer who is within this state, but *beyond the territorial limits of his or her primary jurisdiction*, shall have the power and authority to enforce the laws of this state or any legal ordinance of any city or incorporated village or otherwise perform the functions of his or her office, including the authority to arrest and detain suspects, as if enforcing the laws or performing the functions within the territorial limits of his or her primary jurisdiction in the following cases:

(a) [Deals with fresh pursuit of a person suspected of committing a felony];

(b) [Deals with fresh pursuit of a person suspected of committing a misdemeanor or a traffic infraction];

(c) [Provides for responding to a call for assistance by another officer].

(Emphasis supplied.)

Pursuant to this statute, several questions need to be considered. First, is the conservation officer a peace officer as defined in Neb. Rev. Stat. § 49-801 (Reissue 1993)? Second, was the arrest made within the conservation officer's primary jurisdiction? Third, if not, was the arrest made within any exception to his primary jurisdiction?

### (a) Is a Conservation Officer a Peace Officer?

A conservation officer is not specifically listed as one of the law enforcement officers encompassed by § 29-215. However, "peace officer" is defined in § 49-801(15), which provides: "Peace officer shall include sheriffs, coroners, jailers, marshals, police officers, state highway patrol officers, members of the National Guard on active service by direction of the Governor during periods of emergency, and *all other persons with similar authority to make arrests*." (Emphasis supplied.) Section 49-801(15) does not appear to be an exclusive list, but a con-

servation officer is not specifically enumerated. However, a conservation officer may be included in "all other persons with similar authority to make arrests." An examination of the conservation officer's "authority to make arrests" is required to determine whether the conservation officer has "similar authority" to that of those persons defined as peace officers.

Neb. Rev. Stat. § 37-603 (Reissue 1993) provides:

It shall be the duty of all conservation officers [and] deputy conservation officers . . . to make prompt investigation of and *arrests for any violations of the Game Law* [Neb. Rev. Stat. §§ 37-101 to 37-726 and 37-1401 to 37-1408 (Reissue 1993)] or of sections 81-801 to 81-815.36 observed or reported by any person . . . . *All full-time conservation officers* and full-time deputy conservation officers *are hereby made peace officers of the state with the powers of sheriffs.*

██ Connick contends that § 37-603 grants conservation officers the powers of sheriffs, but that it does not give conservation officers the same jurisdiction as sheriffs. However, § 37-603 does two things: it gives conservation officers the powers of sheriffs, and it also makes them peace officers. Thus, § 37-603 provides that a conservation officer is a peace officer who can make arrests, and therefore a conservation officer comes within the definition in § 49-801(15) and the purview of § 29-215.

(b) Primary Jurisdiction of Conservation Officer

██ The defendant contends that the primary jurisdiction of a conservation officer is in or on any area under the ownership or control of the Game and Parks Commission. We do not agree. As stated above, § 29-215 defines "primary jurisdiction" as "the geographic area within territorial limits of the state or political subdivision which employs the law enforcement officer." This definition does not relate to the powers of a law enforcement officer, but, rather, relates to where the officer may exercise these powers. Under the above statute, a conservation officer is employed by the State of Nebraska and his or her primary jurisdiction is statewide. See, e.g., Neb. Rev. Stat. § 37-607 (Reissue 1993) (recognizing that conservation officers can seize and confiscate contraband "within this state"). See, also, *State v.*

*Giessinger*, 235 Neb. 140, 142, 454 N.W.2d 289, 291 (1990) (wherein court recognized in factual section of its opinion that conservation officer, participating in roadblock with State Patrol officers, has "statewide authority to enforce traffic laws as well as game, fish, and park regulations"). The Supreme Court seems to have rather clearly stated that a conservation officer has statewide authority to enforce traffic laws.

We conclude that the conservation officer had the authority to stop Connick pursuant to § 29-215(1) and, therefore, that the trial court properly denied Connick's motion to suppress based upon these grounds. We conclude that the evidence is sufficient to sustain the conviction. Thus, the State's exception is sustained.

### 2. EFFECT OF IMPROPER ADVISEMENT

The Nebraska Supreme Court has yet to rule on whether the holding of *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995), is applicable to criminal proceedings. This court has held the effect of improper advisement is the same in a criminal case as in a civil case. See *State v. Hingst*, 4 Neb. App. 768, 550 N.W.2d 686 (1996) (citing several unpublished opinions addressing issue in criminal context). The advisory form read to Connick is virtually the same as the advisory form read to the defendant in *Smith v. State, supra.* In *Biddlecome v. Conrad*, 249 Neb. 282, 543 N.W.2d 170 (1996), the Supreme Court held that regardless of the defendant's failure to object to a similar advisory form, its inadequacy constituted plain error. Thus, we conclude that the advisory form and the results from the breath test were erroneously admitted, despite the lack of an objection from Connick's attorney.

However, that does not end the analysis. The case was tried to the court, and exhibit 1 contains more than enough evidence to sustain Connick's conviction without the breath test. It is well established that the erroneous admission of a breath test in a bench trial is not grounds for reversal when there is other admissible evidence to establish the defendant was driving under the influence. See *State v. Green*, 238 Neb. 328, 470 N.W.2d 736 (1991). The admissible evidence is sufficient to sustain the conviction, and Connick was not prejudiced by any error concerning the breath test.

### 3. Effect of Sustaining State's Exception

In *State v. Schall*, 234 Neb. 101, 103, 449 N.W.2d 225, 227 (1989), the Supreme Court stated:

> [W]here a district court, acting as an intermediate appellate court, erred in failing to affirm the conviction and sentence of the county court in a drunk driving case, this court remanded the cause to the district court with direction to reinstate and affirm the county court's judgment of conviction.

We therefore do likewise and remand the cause with directions to the district court to reinstate and affirm the judgment and sentence of the county court.

EXCEPTION SUSTAINED, AND CAUSE
REMANDED WITH DIRECTIONS.