STATE OF NEBRASKA, APPELLANT, V. DIANE F. LANGAN, APPELLEE.

577 N.W. 2d 742

Filed March 31, 1998.    No. A-98-014.

John J. Kohl, Platte County Attorney, and George R. Love, for appellant.

Wm. D. Kurtenbach, of Kurtenbach Law Office, for appellee.

MUES, Judge.

## INTRODUCTION

Pursuant to Neb. Rev. Stat. §§ 29-824 to 29-826 (Reissue 1995), the State of Nebraska appeals an order of the district

court for Platte County, suppressing all evidence resulting from the July 16, 1997, stop of a passenger vehicle and the subsequent arrest by a carrier enforcement officer of the operator of the vehicle for driving while under the influence of alcoholic liquor.

## STATEMENT OF FACTS

Neb. Rev. Stat. § 60-1303(2) (Cum. Supp. 1996) defines carrier enforcement officers as a separate group within the Nebraska State Patrol which is designated to operate weighing stations and portable scales and to perform carrier enforcement duties. On July 16, 1997, at approximately 10:10 p.m., carrier enforcement officer Robert Filkin was in uniform in a marked cruiser sitting to the side of U.S. Highway 30 near Monroe, Nebraska, observing traffic. Traffic was slow, so Filkin decided to move to U.S. Highway 81. As he pulled out onto Highway 30, he noticed the vehicle in front of him, a small Jeep-like vehicle, "starting to swerve." As he followed the vehicle for approximately 6 miles, he observed the vehicle cross the centerline and then swerve back to the right shoulder on several occasions. At one point, the vehicle was off the shoulder and driving on the grass. When it pulled back onto the highway, it barely missed hitting the back end of an oncoming pickup truck. Filkin stopped the vehicle and contacted the driver, Diane F. Langan. He noticed an odor of alcohol and observed that Langan's eyes were bloodshot and watery. She had a hard time finding her driver's license and could not produce registration for the vehicle. Langan subsequently failed the sobriety tests and was arrested for driving while under the influence of alcoholic liquor.

Langan was subsequently charged in county court with driving while under the influence of alcoholic liquor. She filed a motion to suppress, alleging, inter alia, that Filkin did not have the authority to arrest her. Said motion was sustained, and the State dismissed the charges in county court and refiled in district court. Langan filed a new motion to suppress, alleging that Filkin was without authority to arrest Langan, that the arrest was not based on probable cause, and that her statements were not made freely and voluntarily. The motion was sustained, and

the State appeals the district court's order suppressing "all evidence of any kind whatsoever obtained by carrier enforcement officers."

## ASSIGNMENT OF ERROR

The State alleges that the district court erred in finding that Filkin was not "in the performance of his duties" and lacked the power to arrest Langan under Neb. Rev. Stat. § 60-1306 (Cum. Supp. 1996).

## STANDARD OF REVIEW

■ Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998).

■ Regarding questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the trial court. *State v. Stubblefield,* 249 Neb. 436, 543 N.W.2d 743 (1996).

## ANALYSIS

The critical issue on appeal is whether a carrier enforcement officer, under the circumstances of this case, has the statutory authority to stop and arrest a motor vehicle operator for driving while under the influence of alcoholic liquor when that operator is operating a passenger vehicle rather than a bus, motor truck, truck-tractor, semi-trailer, trailer, or towed vehicle. Section 60-1306 details the authority and powers of carrier enforcement officers. It provides in pertinent part:

The carrier enforcement officers shall have the power (1) of peace officers solely for the purpose of enforcing the laws relating to the trip permits provided for in section 66-492 and the International Fuel Tax Agreement Act and the laws relating to the size, weight, load, and registration of buses, motor trucks, truck-tractors, semitrailers, trailers, and towed vehicles, (2) when in uniform, to require the driver thereof to stop and exhibit his or her operator's license and registration issued for the vehicle and submit to an inspection of such vehicle, the plates, the registration

thereon, and licenses and permits required under the motor fuel laws, (3) to make arrests upon view and without warrant for any violation committed in their presence of the provisions of the Motor Vehicle Operator's License Act or of any other law regulating the operation of vehicles or the use of the highways *while in the performance of their duties referred to in subdivisions (1) and (2) of this section and of sections 60-305.12, 60-1308, 60-1309, and 75-363 to 75-368,* (4) to make arrests upon view and without warrant for any violation committed in their presence which is a misdemeanor or felony under the laws of this state *while in the performance of their duties referred to in subdivisions (1) and (2) of this section and of sections 60-305.12, 60-1308, 60-1309, and 75-363 to 75-368,* and (5) to make arrests on warrant for any violation which is a misdemeanor or felony under the laws of this state *while in the performance of their duties referred to in subdivisions (1) and (2) of this section and of sections 60-305.12, 60-1308, 60-1309, and 75-363 to 75-368.*

(Emphasis supplied.)

At the outset, I note that this court recently discussed the authority of conservation officers to make similar arrests. See *State v. Connick,* 5 Neb. App. 176, 557 N.W.2d 713 (1996). The outcome in *Connick* depended in large measure on interpreting specific statutes discussing the power and authority of conservation officers and peace officers, the court having concluded that conservation officers fell within that latter category. Here too the resolution of the issue presented depends mostly on interpreting statutory provisions addressing the authority of carrier enforcement officers, and while § 60-1306(1) grants carrier enforcement officers the general power of peace officers, it does so only for purposes of enforcing specifically enumerated laws not involved in the present appeal. Therefore, *Connick* is not particularly helpful in resolving this appeal.

The State contends that § 60-1306 grants to carrier enforcement officers the power to arrest passenger vehicle operators for driving while under the influence of alcoholic liquor when the officers observe such violations on a highway while the officers are on duty and moving from observation point A to observation

point B. There is no suggestion by the State that the vehicle operated by Langan was one normally associated with the duties of a carrier enforcement officer or that Filkin was engaged in any specific enforcement duty at the time he observed the erratic driving. In other words, the State urges me to interpret the "while in the performance of their duties" portion of the statute to mean that the officers have the authority to arrest such motor vehicle operator for such violation so long as the officers are on duty and generally acting within the course of their employment at the time they observe the violation.

Not surprisingly, Langan argues that the authority of carrier enforcement officers under § 60-1306 is limited to arrests of those drivers who are contacted while the carrier enforcement officer is engaged in enforcing the specific laws relating to trip permits; the International Fuel Tax Agreement Act; laws relating to size, weight, load, and registration of buses, motor trucks, truck-tractors, semi-trailers, trailers, and towed vehicles; and other laws enumerated in subsections (1) and (2) of § 60-1306. She contends that since she was not operating any of these described vehicles, Filkin was not and could not have been engaged in the enforcement of these specified laws when he stopped her.

Familiar principles of statutory interpretation must be applied when determining whether or not § 60-1306 grants on-duty carrier enforcement officers the power to arrest a passenger vehicle operator such as Langan for driving while under the influence of alcoholic liquor. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Metropolitan Utilities Dist. v. Balka*, 252 Neb. 172, 560 N.W.2d 795 (1997). In construing a statute, a court must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, and unambiguous out of a statute. *Omaha World-Herald v. Dernier*, 253 Neb. 215, 570 N.W.2d 508 (1997).

When a challenged statute is susceptible of more than one reasonable construction, a court uses the construction that

will achieve the purposes of the statute and preserve the statute's validity. *Southeast Rur. Vol. Fire Dept. v. Neb. Dept. of Rev.*, 251 Neb. 852, 560 N.W.2d 436 (1997). In determining the meaning of a statute, an appellate court may conjunctively consider and construe a collection of statutes which pertain to a certain subject matter to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible. *Snipes v. Vickers*, 251 Neb. 415, 557 N.W.2d 662 (1997).

With these principles in mind, I first examine the language of the statute at issue in this case. Subsection (1) of § 60-1306 grants carrier enforcement officers certain powers in enforcing laws relating to trip permits; the International Fuel Tax Agreement Act; and the size, weight, load, and registration of buses, motor trucks, truck-tractors, semi-trailers, trailers, and towed vehicles. Subsection (2) authorizes the officers to stop drivers of such vehicles and to inspect the operator's license and registration issued for the vehicle, such vehicle, the plates, the registration thereon, and licenses and permits required under the motor fuel laws. The grant of the arrest powers in subsections (3), (4), and (5) is made in connection with performing specific activities as referred to in subsections (1) and (2) and those addressed in Neb. Rev. Stat. § 60-305.12 (Cum. Supp. 1996) (display of registered owner's name), Neb. Rev. Stat. § 60-1308 (Reissue 1993) (failure to stop at weigh station), Neb. Rev. Stat. § 60-1309 (Reissue 1993) (resisting arrest, refusing to obey carrier enforcement officer), and Neb. Rev. Stat. §§ 75-363 to 75-368 (Reissue 1996) (motor carrier safety regulations, federal hazardous material regulations). In addition, § 60-1306(3) grants arrest powers for violations of the Motor Vehicle Operator's License Act, Neb. Rev. Stat. §§ 60-462 to 60-4,188 (Reissue 1993 & Cum. Supp. 1996). The plain language of § 60-1306 grants arrest powers to carrier enforcement officers only in the performance of specific enumerated duties and functions.

Neb. Rev. Stat. § 81-2005 (Reissue 1994) provides in pertinent part:

> The Superintendent of Law Enforcement and Public Safety and all officers of the Nebraska State Patrol, *except*

*all carrier enforcement officers assigned to the carrier enforcement division*, shall have the power:

> (1) Of peace officers for the purpose of enforcing the provisions of the Motor Vehicle Operator's License Act and any other law regulating the registration or operation of vehicles or the use of the highways.

(Emphasis supplied.) Conjunctively considering § 81-2005 and § 60-1306 and giving effect to all of the parts of each, it is clear that carrier enforcement officers are not granted the full realm of powers possessed by State Patrol troopers. Rather, they are granted only those powers specifically enumerated in § 60-1306. As discussed later, § 81-2005 was initially the subject of amendment when § 60-1306 was changed in 1994 but, in the end, remained the same insofar as excluding carrier enforcement officers from the broad power given other State Patrol troopers.

The Legislature, in 1994 Neb. Laws, L.B. 28, amended § 60-1306 to include the relevant subsections (3), (4), and (5). The legislative history for L.B. 28 offers guidance on the legislative intent and purpose. Prior to the 1994 amendment, carrier enforcement officers could arrest only for violations of the laws specifically enumerated in § 60-1306, i.e., the laws they were responsible for enforcing. See § 60-1306 (Reissue 1993). For example, if a truckdriver came through a weigh station and it was clearly evident that the driver was intoxicated or had illegal drugs in his or her possession, the carrier enforcement officer would have to call in another trooper or local law enforcement officer to make the arrest. If the carrier enforcement officer discovered through a computer check that a certain truckdriver had a felony warrant out for robbery, the carrier enforcement officer was required to call in another officer to make the arrest. See, Transportation Committee Hearing, 93d Leg., 1st Sess. 52 (Feb. 23, 1993); Floor Debate, 93d Leg., 2d Sess. 7863 (Jan. 12, 1994).

The main thrust of L.B. 28 appears to have been to expand the arrest power of carrier enforcement officers so as to effectuate arrests for violations committed in view of the officers though the law violated was not one which the officers were otherwise specifically empowered to enforce. See Floor Debate,

93d Leg., 2d Sess. 7877 (Jan. 12, 1994). Senator David Bernard-Stevens, one of the introducers of L.B. 28, stated that "[w]hat this bill will basically say is, look, if, *in the line of what you're doing on weights and measures*, you come across something, instead of having to wait and possibly let the person go, we're going to give you the power to make the arrest." (Emphasis supplied.) Floor Debate, 93d Leg., 2d Sess. 7913 (Jan. 12, 1994). In its original form, L.B. 28 sought to amend § 81-2005 to eliminate the exception and to include carrier enforcement officers in the general grant of powers given to State Patrol troopers as discussed above.

In the floor debate on L.B. 28, a concern was expressed over expanding the powers of carrier enforcement officers to the point where they had more authority than a State Patrol trooper, i.e., all the powers of a State Trooper plus those of a carrier enforcement officer. See Floor Debate, 93d Leg., 2d Sess. 7910-11 (Jan. 12, 1994) and 9030 (Feb. 14, 1994). To address these concerns, the bill was amended to leave § 81-2005 intact, and additional amendments were made resulting in the relevant version of § 60-1306 involved here. It seems apparent to me that these amendments were intended to preserve the original bill's intent to expand the carrier enforcement officers' arrest powers yet restrict those powers to something less than those granted to State Patrol troopers generally. This is evident from omitting the section of L.B. 28 amending § 81-2005 as well as from the following comment by Senator Bernard-Stevens:

> One of the questions that was asked [about the original version of L.B. 28 concerning] the carrier enforcement was, would . . . they be kind of super troopers and this type of thing? . . . The only time they would have the arrest capabilities that would be granted to them under this particular law, if passed, would be in the performance of their duties, period. So they will only be able to do this while they're performing their duties so they can't be pulled off to do something else, only in performance of their duties as carrier enforcement.

Floor Debate, 93d Leg., 2d Sess. 9030-31 (Feb. 14, 1994). While I fully understand that this, and other debate occurring in

the legislative process on L.B. 28, does not conclusively answer the precise issue before me, I believe it is helpful, particularly when viewing it in context.

I conclude that in adopting the 1994 amendments to § 60-1306, the Legislature intended to expand the arrest powers of carrier enforcement officers, but to limit such powers to arrest only for violations observed while enforcing the specific laws enumerated. I believe that the language authorizing arrest powers only if violations are observed "while in the performance of their duties" followed immediately by references to certain specific functions and laws leads to such an interpretation. Thus, the arrest powers granted to carrier enforcement officers under § 60-1306 do not allow arrests for all stated law violations which the officers may observe while on duty generally. Rather, such powers are limited to arrests only for such stated violations which are viewed by the officers while they are performing a function specifically related to the duties enumerated in subsections (1) and (2) or a function related to those duties addressed in the statutes and laws referred to in subsections (3), (4), and (5). To read the statute as granting arrest powers for violations observed at any time while such officers are "on duty," as the State urges, would effectively require me to ignore the disharmony that such a construction would create vis-a-vis § 81-2005. See *Snipes v. Vickers*, 251 Neb. 415, 557 N.W.2d 662 (1997). Such a construction would also, I believe, require me to read out of the statutes the rather clear language restricting the arrest powers of such officers. See *Omaha World-Herald v. Dernier*, 253 Neb. 215, 570 N.W.2d 508 (1997). This I am not at liberty to do.

Filkin stopped Langan's passenger vehicle because of her erratic driving. While clearly he was on duty and acting within the general course of his employment as a carrier enforcement officer at the time he observed the vehicle, the vehicle was not one over which a carrier enforcement officer has enforcement powers under § 60-1306(1) or (2), and Filkin was not at that time performing a function specifically related to any duties enumerated in § 60-1306 or the statutes referenced therein.

## CONCLUSION

Section 60-1306 does not grant the same arrest authority to carrier enforcement officers as enjoyed by State Patrol troopers generally. Rather, the statute restricts the carrier enforcement officers' arrest authority to situations where they observe law violations while performing functions specifically related to the duties enumerated. I agree with the district court that Filkin was not performing such functions at the time of the stop and arrest of Langan. Therefore, Filkin was not "in the performance of his duties" so as to authorize the arrest of Langan under § 60-1306. Thus, the trial court's order suppressing the evidence obtained from this unlawful arrest is affirmed.

AFFIRMED.