Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/12/2023 09:06 AM CST

State of Nebraska, appellee, v.
Michael C. Hoehn, appellant.

___ N.W.2d ___

Filed December 5, 2023.    No. A-22-885.

1. **Criminal Law: Courts: Judgments: Appeal and Error.** In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

2. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

3. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court.

4. ____: ____. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

5. **Statutes: Legislature: Intent.** Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the

intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

6. ____: ____: ____. In order for a court to inquire into a statute's legislative history, that statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.

7. **Statutes.** It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.

8. **Statutes: Appeal and Error.** To give effect to all parts of a statute, an appellate court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible, and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.

9. **Words and Phrases.** Under the ejusdem generis canon of construction, when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed.

10. ____. Under the ejusdem generis canon of construction, specific terms modify and restrict the interpretation of general terms when they are used in a sequence.

11. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** An officer's stop of a vehicle is objectively reasonable when the officer has probable cause to believe that a traffic violation has occurred.

12. **Investigative Stops: Motor Vehicles: Probable Cause.** Traffic violations, no matter how minor, create probable cause to stop the driver of a vehicle.

13. **Search and Seizure: Evidence.** The exclusionary rule is not found in the federal or state Constitution, but is a prudential doctrine to be employed where the deterrence benefits of suppression outweigh its costs.

14. **Police Officers and Sheriffs: Probable Cause.** Police officers are not required to be legal scholars, but implicit in the probable cause standard is the requirement that a police officer's mistakes be reasonable.

15. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government.

16. **Constitutional Law: Search and Seizure: States.** The Fourth Amendment's protections are implicated whenever state action intrudes on a citizen's reasonable expectation of privacy.

17. **Constitutional Law: Search and Seizure.** Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.
18. ____: ____. The analysis of whether the violation of a state law restricting searches is sufficient to show a Fourth Amendment violation turns on whether society recognizes an expectation of privacy deserving of the most scrupulous protection from government invasion.
19. **Judgments: Appeal and Error.** When the record demonstrates that the decision of the trial court is correct, although such correctness is based on different grounds from those assigned by the trial court, an appellate court will affirm.

Appeal from the District Court for Scotts Bluff County, ANDREA D. MILLER, Judge, on appeal thereto from the County Court for Scotts Bluff County, KRIS D. MICKEY, Judge. Judgment of District Court affirmed.

Bell Island, of Island Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, Austin N. Relph, and Braden Dvorak, Senior Certified Law Student, for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Michael C. Hoehn appeals the Scotts Bluff County District Court's order affirming his conviction of driving under the influence. He contends that the district court erred in finding that the county court properly overruled his motion to suppress. For the reasons set forth herein, we affirm the decision of the district court, which affirmed the county court's order overruling Hoehn's motion to suppress.

## STATEMENT OF FACTS

### FACTS LEADING TO ARREST

On May 24, 2021, following a citizen report of a white pickup that "was all over the roadway," which roadway was

located outside of the city limits of Minatare, Nebraska, police officer Matt Rockwell left the city limits to investigate. After crossing the city line, Officer Rockwell observed a white pickup making a wide turn, straddling the centerline, and driving into the median, while the occupant threw cans out of the driver's-side window. Officer Rockwell stopped the pickup, which was being driven by Hoehn. Following the stop, which occurred outside the city limits of Minatare but within Scotts Bluff County, Officer Rockwell arrested Hoehn. Hoehn was subsequently charged in Scotts Bluff County Court with first offense driving under the influence with a blood alcohol content of .15 or more, a Class W misdemeanor. The charge was subsequently amended to first offense driving under the influence with a blood alcohol content of .08 or more, also a Class W misdemeanor. See Neb. Rev. Stat. § 60-6,196 (Reissue 2021).

## Motion to Suppress

Hoehn filed a motion to suppress "all fruits of the illegal search and seizure, and his subsequent arrest." Hoehn specifically argued during the suppression hearing that there was an insufficient showing that Officer Rockwell was authorized to make the stop in violation of his rights under the 4th and 14th Amendments to the U.S. Constitution; article I, §§ 1, 3, and 7, of the Nebraska Constitution; and any and all relevant Nebraska Revised Statutes.

During the suppression hearing, the State's sole witness was Officer Rockwell. Officer Rockwell described the events that occurred on May 24, 2021, that led to Hoehn's arrest. Officer Rockwell testified that he received a radio dispatch that a citizen had reported following a white pickup heading "north on the 79E Link Highway that was all over the roadway." Officer Rockwell responded to that dispatch, and upon arriving at the described location, he observed "a white pickup . . . making a wide turn." As the pickup turned, Officer Rockwell observed "what appeared to be a beer can, a pop can, something

like that come out of the driver's window." According to Officer Rockwell, the pickup "was straddling . . . the center line closest to the grass median" heading east on the highway. Officer Rockwell turned on his vehicle's patrol lights and followed the pickup. According to Officer Rockwell,

> right before [the pickup] got . . . back to Minatare there's a turnaround that you can make in the four-lane [highway]. And the pickup was turning. And there was some oncoming traffic. [The pickup] made a turn right in front of a car, and I thought there was going to be an accident, and then [the pickup made] a quick turn then right down into the grass median. . . .

During this turnaround, Officer Rockwell observed another can being thrown out of the window of the pickup. The driver, who was heading west, "accelerated really hard because [the pickup] was digging in with both back tires into the grass, throwing grass and dirt . . . up away from the pickup a long ways. [The pickup] had pulled back onto the highway and accelerated rapidly." Officer Rockwell continued following the pickup, which "turned . . . went as far as the 79E Link again, turned south and went just a short little ways and then pulled right over to the right side of the road and stopped." Officer Rockwell identified the driver as Hoehn and noted that Hoehn's speech was slurred and that he had "bloodshot, watery eyes." Officer Rockwell stated he "could smell a strong odor of an alcoholic beverage coming out of the vehicle." Since Officer Rockwell did not have a working in-car video camera and did not have a body camera, he waited for another deputy to arrive, who had an in-car patrol video camera and body camera, to have Hoehn perform field sobriety tests. The events that transpired from that point on were captured by the other deputy's in-car video camera and his body camera. Officer Rockwell testified that all of the events occurred in Scotts Bluff County.

Following the suppression hearing, the county court denied Hoehn's motion to suppress from the bench stating that

the [S]tate had proper authority to make a traffic stop upon observing the driving through the median, the taking the wide turn, the driving across the center line next to the median. The odor of alcoholic beverage, his speech being slurred, his eyes [were] bloodshot and watery, his inability to complete the field sobriety tests, observed dropping his phone and falling over behind the pickup, as well as the preliminary breath test that was administered, I find there was sufficient probable cause . . . for the arrest.

The court's written journal entry stated that "[a] careful examination of the evidence concerning the stop and arrest of [Hoehn] shows the motion to suppress is without merit. There was sufficient evidence justifying the traffic stop, and the arrest is supported by ample evidence of probable cause."

## Stipulated Trial and Sentencing

A stipulated bench trial was held in October 2021 on the evidence presented during the suppression hearing, with Hoehn preserving the issues raised in his motion to suppress. The parties also stipulated that Hoehn's blood draw was done in compliance with the applicable administrative code provisions and the test result was .245. The county court found Hoehn guilty of the charged offense and sentenced Hoehn to 12 months' probation, 40 hours of community service, a $500 fine, and a 60-day license revocation, along with an order authorizing an ignition interlock permit.

## Appeal to District Court

Following his sentencing, Hoehn timely appealed to the Scotts Bluff County District Court, contending that the county court erred, inter alia, in overruling his motion to suppress. Hoehn challenged Officer Rockwell's authority to stop Hoehn outside of his primary jurisdiction, i.e., the city limits of Minatare.

The district court determined that the county court properly denied Hoehn's motion to suppress and affirmed his

conviction. Although the district court noted that there was no dispute that Officer Rockwell was outside the Minatare city limits when the stop took place, the court found:

Officer Rockwell had probable cause to believe . . . Hoehn was operating a motor vehicle while under the influence of alcoholic liquor sufficient to initiate a stop of the vehicle. The citizen report from dispatch regarding the vehicle being all over the road, observation of throwing a can out [of] the window on two separate occasions, along with the erratic driving observed by the officer create[d] probable cause in this case to believe the crime of driving while under the influence was committed and thus stop the vehicle.

Relying on Neb. Rev. Stat § 29-215(3)(c) (Reissue 2016), the district court found:

Here Officer Rockwell made a stop outside the city of Minatare limits with a suspected driver under the influence of alcohol operating the motor vehicle. The stop was directly and solely related to enforcing the laws that concern a person operating or being in the actual physical control of any motor vehicle. The motion to suppress was thus properly overruled.

Hoehn has timely appealed to this court.

ASSIGNMENTS OF ERROR

Hoehn contends that the district court erred in finding that the county court properly overruled his motion to suppress. Specifically, Hoehn contends that (1) Officer Rockwell could not leave his jurisdiction without probable cause pursuant to § 29-215(3)(c); (2) probable cause did not exist to stop Hoehn's pickup; (3) the radio dispatch was not from a citizen informant, but instead was an uncorroborated anonymous call; and (4) erratic driving and a can being thrown from the driver's-side window was not probable cause to believe a person was driving under the influence.

## STANDARD OF REVIEW

[1] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Johnson*, 310 Neb. 527, 967 N.W.2d 242 (2021). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id*. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*.

[2] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Drake, supra*.

[3] Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court. *State v. Williams*, 313 Neb. 981, 987 N.W.2d 613 (2023).

## ANALYSIS

### Lawfulness of Stop

We first address Hoehn's claim that the district court erred in affirming the county court's denial of his motion to suppress on the basis that Officer Rockwell had no authority to leave his jurisdiction prior to developing probable cause to further investigate Hoehn. Hoehn argues that "[i]f an officer is allowed to leave his jurisdiction under . . . §29-215(3), the officer must have probable cause before leaving." Brief for appellant at 10. He contends that because Officer Rockwell did not have probable cause that Hoehn was operating his

vehicle while under the influence prior to leaving the officer's primary jurisdiction, the stop and arrest of Hoehn was unlawful.

The State disagrees. The State argues that "the plain language of § 29-215(3) does not require probable cause to exist *before* leaving the jurisdiction[;] it only requires that probable cause exist before taking action with respect to the individual involved." Brief for appellee at 11 (emphasis in original). The State further argues that "if probable cause exists to believe an individual is operating a motor vehicle while under the influence, law enforcement has the authority to stop the individual and enforce the law, even outside of the officer's primary jurisdiction." Brief for appellee at 10. As applied to the instant case, the State contends that because Officer Rockwell had probable cause to believe that Hoehn was operating his vehicle in violation of driving under the influence laws prior to the stop of Hoehn, Officer Rockwell had the authority to stop Hoehn under § 29-215(3)(c).

[4-6] In considering the parties' arguments concerning the interpretation of § 29-215(3)(c), we apply familiar principles of statutory interpretation that the Nebraska Supreme Court set forth in *Heist v. Nebraska Dept. of Corr. Servs.*, 312 Neb. 480, 492, 979 N.W.2d 772, 782-83 (2022):

First, statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. Second, components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible.

Ordinarily, we look no further than the text. In order for a court to inquire into a statute's legislative history, that statute in question must be open to construction, and a statute is open to construction when its terms

require interpretation or may reasonably be considered ambiguous.

[7,8] In performing that analysis, the Nebraska Supreme Court held in *Angel v. Nebraska Dept. of Nat. Resources*, 314 Neb. 1, 12, 988 N.W.2d 507, 516 (2023):

It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute. To give effect to all parts of a statute, an appellate court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible, and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.

The issue requires us to examine the full jurisdictional authority of law enforcement officers in this state. The authorizing statute is found at § 29-215 and provides, in pertinent part:

(1) A law enforcement officer has the power and authority to enforce the laws of this state and of the political subdivision which employs the law enforcement officer or otherwise perform the functions of that office anywhere within his or her primary jurisdiction.

(2) Any law enforcement officer who is within this state, but beyond his or her primary jurisdiction, has the power and authority to enforce the laws of this state or any legal ordinance of any city or incorporated village or otherwise perform the functions of his or her office, including the authority to arrest and detain suspects, as if enforcing the laws or performing the functions within his or her primary jurisdiction in the following cases:

(a) Any such law enforcement officer, if in a fresh attempt to apprehend a person suspected of committing a felony, may follow such person into any other jurisdiction in this state and there arrest and detain such person

and return such person to the law enforcement officer's primary jurisdiction;

(b) Any such law enforcement officer, if in a fresh attempt to apprehend a person suspected of committing a misdemeanor or a traffic infraction, may follow such person anywhere in an area within twenty-five miles of the boundaries of the law enforcement officer's primary jurisdiction and there arrest and detain such person and return such person to the law enforcement officer's primary jurisdiction;

(c) Any such law enforcement officer shall have such enforcement and arrest and detention authority when responding to a call in which a local, state, or federal law enforcement officer is in need of assistance. A law enforcement officer in need of assistance shall mean (i) a law enforcement officer whose life is in danger or (ii) a law enforcement officer who needs assistance in making an arrest and the suspect (A) will not be apprehended unless immediately arrested, (B) may cause injury to himself or herself or others or damage to property unless immediately arrested, or (C) may destroy or conceal evidence of the commission of a crime; and

(d) Any municipality or county may, under the provisions of the Interlocal Cooperation Act or the Joint Public Agency Act, enter into a contract with any other municipality or county for law enforcement services or joint law enforcement services. Under such an agreement, law enforcement personnel may have such enforcement authority within the jurisdiction of each of the participating political subdivisions if provided for in the agreement. Unless otherwise provided in the agreement, each participating political subdivision shall provide liability insurance coverage for its own law enforcement personnel as provided in section 13-1802.

(3) When probable cause exists to believe that a person is operating or in the actual physical control of

any motor vehicle, motorboat, personal watercraft, or aircraft while under the influence of alcoholic liquor or of any drug or otherwise in violation of section 28-1465, 28-1466, 28-1472, 37-1254.01, 37-1254.02, 60-4,163, 60-4,164, 60-6,196, 60-6,197, 60-6,211.01, or 60-6,211.02, the law enforcement officer has the power and authority to do any of the following or any combination thereof:

(a) Transport such person to a facility outside of the law enforcement officer's primary jurisdiction for appropriate chemical testing of the person;

(b) Administer outside of the law enforcement officer's primary jurisdiction any post-arrest test advisement to the person; or

(c) With respect to such person, perform other procedures or functions outside of the law enforcement officer's primary jurisdiction which are directly and solely related to enforcing the laws that concern a person operating or being in the actual physical control of any motor vehicle, motorboat, personal watercraft, or aircraft while under the influence of alcoholic liquor or of any other drug or otherwise in violation of section 28-1465, 28-1466, 28-1472, 37-1254.01, 37-1254.02, 60-4,163, 60-4,164, 60-6,196, 60-6,197, 60-6,211.01, or 60-6,211.02.

Subsection (1) provides the general scope of an officer's power and authority to enforce the laws of this state and the political subdivision that employs the officer. It provides that a law enforcement officer has the power and authority to enforce the laws of this state and the political subdivision that employs the officer, or otherwise perform the functions of that office, anywhere within his or her primary jurisdiction. Primary jurisdiction is defined in subsection § 29-215(4)(b) as "the geographic area within the territorial limits of the state or political subdivision which employs the law enforcement officer." We will refer to the officer's full power and authority as the officer's plenary powers. Without more, an

officer's plenary powers are limited to that officer's primary jurisdiction.

But § 29-215(2) and (3) provide additions to the officer's primary jurisdictional authority. Subsection (2) provides that an officer who is within the state, but beyond the officer's primary jurisdiction, has plenary powers, including the authority to arrest and detain, as if performing the functions in the officer's primary jurisdiction in certain limited circumstances. These are described in subsections (2)(a) through (d). These exceptions have been generally described by this court as follows: subsection (2)(a)—the fresh pursuit of a person suspected of committing a felony; subsection (2)(b)—the fresh pursuit of a person suspected of committing a misdemeanor or traffic violation; and subsection (2)(c)—response to a call for assistance by another officer. See *State v. Connick*, 5 Neb. App. 176, 557 N.W.2d 713 (1996). Subsequently, § 29-215(2) was amended to add subsection (d), which provides for a municipality or county to enter into a contract with any other municipality or county under the Interlocal Cooperation Act or the Joint Public Agency Act for law enforcement services or joint law enforcement services for services provided in the agreement. Neither party suggests that any of the subsection (2) extraterritorial grants of authority apply in the case at bar.

Instead, both parties cite to the extraterritorial exception found in § 29-215(3), but then disagree about the subsection's meaning. Unlike subsection (2), § 29-215(3) provides:

When probable cause exists to believe that a person is operating or in the actual physical control of any motor vehicle . . . while under the influence of alcoholic liquor or of any drug . . . the law enforcement officer *has the power and authority to do any of the following or any combination thereof:*

(a) Transport such person to a facility outside of the law enforcement officer's primary jurisdiction for appropriate chemical testing of the person;

(b) Administer outside of the law enforcement officer's primary jurisdiction any post-arrest test advisement to the person; or

(c) With respect to such person, perform other procedures or functions outside of the law enforcement officer's primary jurisdiction which are directly and solely related to enforcing the laws that concern a person operating or being in the actual physical control of any motor vehicle . . . while under the influence of alcoholic liquor or of any other drug . . . .

(Emphasis supplied.) As such, when an officer has probable cause to believe a person is operating a vehicle while under the influence, the powers of an officer outside of the officer's jurisdiction are limited to transporting for chemical testing, administering post-arrest test advisements, and "perform[ing] other procedures or functions outside of the law enforcement officer's primary jurisdiction which are directly and solely related to enforcing the laws that concern a person operating or being in the actual physical control of any motor vehicle" while under the influence of drugs or alcohol. See § 29-215(3).

The State would have us read § 29-215(3)(c) as a general grant of plenary authority granting officers full power and authority to enforce the laws of the state regarding driving under the influence offenses, including detention and arrest, outside of the officer's primary jurisdiction so long as the officer's actions are supported by probable cause. Hoehn would have us read § 29-215(3)(c) as a general grant of plenary authority so long as probable cause is first developed within the officer's primary jurisdiction before continuing the officer's investigation. After reviewing the entirety of the language of § 29-215, we reject both interpretations.

As to the State's suggestion that § 29-215(3)(c) grants primary jurisdictional authority, including the power to arrest and detain, any time probable cause exists to believe a person is driving under the influence anywhere, we find that the

State's proposed interpretation would not give effect to the language of the statute as it was constructed.

[9,10] In *Kuhn v. Wells Fargo Bank of Neb.*, 278 Neb. 428, 445-46, 771 N.W.2d 103, 118-19 (2009), in analyzing a statutory canon of construction, the Nebraska Supreme Court held:

[U]nder the ejusdem generis canon of construction, when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed. In other words, specific terms modify and restrict the interpretation of general terms when they are used in a sequence.

Here, unlike § 29-215(1) and (2), which provides officers with full plenary authority to "enforce the laws of this state" within its jurisdictional or extra-jurisdictional territories as defined, § 29-215(3) provides:

When probable cause exists to believe that a person is operating or in the actual physical control of any motor vehicle . . . while under the influence of alcoholic liquor or of any drug . . . the law enforcement officer *has the power and authority to do any of the following or any combination thereof* . . . .

(Emphasis supplied.) Section 29-215(3) then lists the following restrictive power and authority the following order:

(a) Transport such person to a facility outside of the law enforcement officer's primary jurisdiction for appropriate chemical testing of the person;

(b) Administer outside of the law enforcement officer's primary jurisdiction any post-arrest test advisement to the person; or

(c) With respect to such person, perform other procedures or functions outside of the law enforcement officer's primary jurisdiction which are directly and solely related to enforcing the laws that concern a person operating or being in the actual physical control of any

motor vehicle . . . while under the influence of alcoholic
liquor or of any other drug . . . .

The State would have us read § 29-215(3)(c) as a broad
grant of authority that includes full officer enforcement pow-
ers, including the powers to arrest and detain, even though
this grant of power follows the more specific and limiting
powers set forth in § 29-215(3)(a) and (b). Applying the
ejusdem generis canon of construction, we read the general
language in subsection (3)(c) as a grant of power of the same
limiting type set forth in both subsections (3)(a) and (3)(b).
That is, we see the language in subsection (3)(c) as grant-
ing other procedural-type powers relating to enforcing laws
outside the officer's primary jurisdiction incident to an arrest
or detention for which the officer had jurisdictional authority
to arrest or detain under § 29-215(1) or (2). Accordingly, we
find that § 29-215(3) does not provide an officer with plenary
powers to arrest or detain an individual outside of the offi-
cer's primary jurisdiction even where probable cause exists
to believe a person is operating a motor vehicle while under
the influence of alcohol or drugs in another jurisdiction. To
the contrary, under its explicit terms, § 29-215(3) provides
officers with limited powers to perform functions in another
jurisdiction when probable cause exists in connection with a
jurisdictional stop and arrest.

The concurrence urges: "If the majority's interpretation of
the statute stands, particularly now that § 29-215(3) has been
construed, law enforcement would be constrained from inter-
vening in potentially dangerous situations involving drivers
under the influence of alcohol or drugs merely because the
dangerous situation was taking place outside the officer's pri-
mary jurisdiction." Although that expression may serve as an
aid for future legislative policy, we are confined to interpret
the language of the statute as it is currently written.

Because the evidence demonstrates that Officer Rockwell's
investigation and stop occurred outside of his jurisdiction and
there was no evidence of a § 29-215(2) extraterritorial right
to extend full plenary powers to Officer Rockwell outside

his jurisdiction, his investigation, stop, and arrest of Hoehn was conducted without jurisdictional authority.

## Probable Cause

Hoehn next argues that Officer Rockwell did not have probable cause to conduct a stop of his vehicle.

[11,12] An officer's stop of a vehicle is objectively reasonable when the officer has probable cause to believe that a traffic violation has occurred. *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008). Traffic violations, no matter how minor, create probable cause to stop the driver of a vehicle. *Id*.

Here, prior to the stop of Hoehn's pickup, Officer Rockwell had received information from dispatch of a report that a white pickup heading north on the 79E Link Highway "was all over the roadway." Although Hoehn argues that the call should be considered to be an uncorroborated anonymous call, not a citizen informant, we find that the distinction is not determinative in this case. Even if the call was considered to be an uncorroborated anonymous call, after receiving that information, Officer Rockwell observed Hoehn's white pickup being driven erratically, including making a wide turn, straddling the centerline, and driving into the median, and he saw the occupant throw one or two cans out of the driver's-side window. Based upon these observed traffic violations, Officer Rockwell had probable cause to conduct a stop of Hoehn's pickup. However, even though Officer Rockwell had probable cause to stop Hoehn's pickup, because we determined that Officer Rockwell lacked jurisdiction to conduct the stop, we must determine whether the exclusionary rule requires the suppression of the evidence obtained as a result of the stop, detainment, and arrest of Hoehn.

## Application of Exclusionary Rule

Having determined that Officer Rockwell's actions were carried out without jurisdictional authority, we must now examine the applicability of the exclusionary rule that was addressed by both parties during oral argument.

[13,14] In *State v. Albarenga*, 313 Neb. 72, 90-91, 982 N.W.2d 799, 814 (2022), the Nebraska Supreme Court stated:

The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ," as does article I, § 7, of the Nebraska Constitution. The exclusionary rule is not found in the federal or state Constitution, but is a prudential doctrine to be employed where the deterrence benefits of suppression outweigh its costs. When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. On the other hand, when the police act with an objectively reasonable good faith belief that their conduct is lawful or when their conduct involves only simple, isolated negligence, the deterrent value is weak and tends not to outweigh the resulting costs.

. . . . Police officers are not required to be legal scholars, but implicit in the probable cause standard is the requirement that a police officer's mistakes be reasonable.

[15-17] Before examining the application of the exclusionary rule, we first pause to note that it is a prudential doctrine developed to deter police conduct when such police conduct "exhibit[s] deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *State v. Albarenga*, 313 Neb. at 91, 982 N.W.2d at 814. See *Davis v. United States*, 564 U.S. 229, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011). As the Nebraska Supreme Court held in *State v. Knutson*, 288 Neb. 823, 835, 852 N.W.2d 307, 319 (2014):

The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government. . . .

The Fourth Amendment's protections are implicated whenever state action intrudes on a citizen's reasonable

expectation of privacy. "'Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'"

[18] In considering application of the exclusionary rule, the State urges us to consider the Nebraska Supreme Court's holding in *Knutson*, wherein the court found that the particular violation of state law restricting searches involved in *Knutson* was insufficient to show a Fourth Amendment violation. The State argues that because Officer Rockwell's misunderstanding of § 29-215(c)(3) simply constitutes a violation of state law restricting jurisdiction, its violation alone is insufficient to constitute a Fourth Amendment violation thereby invoking the protections of the exclusionary rule. We disagree. As the Nebraska Supreme Court noted in *Knutson*, "The analysis turns on whether society recognizes an expectation of privacy deserving of ""the most scrupulous protection from government invasion."'" 288 Neb. at 838, 852 N.W.2d at 320-21, quoting *California v. Greenwood*, 486 U.S. 35, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988). Thus, the question becomes whether a violation of this jurisdictional statute touches upon a societal expectation of privacy deserving of the most scrupulous protection from government invasion.

In assessing the application of a jurisdictional violation by an officer who conducted a stop in violation of the jurisdictional mandates of § 29-215, the Nebraska Supreme Court held, in *State v. Cuny*, 257 Neb. 168, 595 N.W.2d 899 (1999), that such a violation did warrant application of the exclusionary rule under certain circumstances. Without analysis regarding the interplay between a statutory jurisdictional violation under § 29-215 and the Fourth Amendment to the U.S. Constitution, the Nebraska Supreme Court held:

> Having concluded that the actions of the . . . police officers were unlawful, we find the evidence obtained by [the sheriff] was the fruit of an illegal search or

seizure, in violation of the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution, is inadmissible in a state prosecution, and must be excluded. See *State v. Tingle*, 239 Neb. 558, 477 N.W.2d 544 (1991), citing *State v. O'Kelly*, 175 Neb. 798, 124 N.W.2d 211 (1963), *cert. denied* 376 U.S. 956, 84 S. Ct. 978, 11 L. Ed. 2d 975 (1964). After concluding that the . . . police officers were without authority to make the stop and arrest, we hold that [the defendant's] arrest was unlawful and that the trial court was clearly wrong in not suppressing all evidence obtained pursuant to the illegal actions.

*State v. Cuny*, 257 Neb. at 173-74, 595 N.W.2d at 903.

We reach a similar conclusion here that this statutory jurisdiction violation does implicate the Fourth Amendment. We recognize, as does the concurring opinion, that case law exists that holds that certain statutory violations do not also constitute violations of an individual's Fourth Amendment rights. However, the facts of this case most closely reflect those found in *State v. Cuny, supra*. As such, we find no sufficient basis upon which we can reach an outcome inconsistent with the Nebraska Supreme Court's decision in that case. This requires that we now examine whether the exclusionary rule should be applied.

Although we have found that Officer Rockwell's actions were conducted without jurisdictional authority, we also acknowledge that prior to the stop herein, § 29-215(3) had not been construed by any Nebraska appellate court and that Officer Rockwell could have reasonably believed that he had jurisdictional authority to stop and arrest Hoehn. We further note that Officer Rockwell's actions were not deliberate, reckless, or in grossly negligent disregard for Fourth Amendment rights. The culpability standard used in describing the requisite conduct necessary to apply the exclusionary rule is simply not present in this case. See *State v. Bray*, 297 Neb. 916, 902 N.W.2d 98 (2017) (exclusionary rule is applicable only where

its deterrence benefits outweigh substantial social costs). To the contrary, the record reveals that Officer Rockwell detained Hoehn after observing Hoehn operating his vehicle in a dangerous manner, which observation provided the officer with probable cause to stop the vehicle subject to jurisdictional authority under a rule of law that had not previously been interpreted by a Nebraska appellate court. Under these limited circumstances, we decline to apply the exclusionary rule in this case.

[19] We have found that although the stop, detainment, and arrest of Hoehn violated his constitutional rights, the facts did not support application of the exclusionary rule in this case. Because we find that Officer Rockwell had probable cause before stopping Hoehn and that his conduct did not rise to the level of a deliberate, reckless, or grossly negligent disregard for Hoehn's Fourth Amendment rights, the deterrence benefits of suppression do not outweigh the costs and therefore application of the exclusionary rule is not warranted. Despite the fact that our reasoning differs from that of the district court, when the record demonstrates that the decision of the trial court is correct, although such correctness is based on different grounds from those assigned by the trial court, an appellate court will affirm. See *State v. Pauly*, 311 Neb. 418, 972 N.W.2d 907 (2022).

## CONCLUSION

In sum, although Officer Rockwell lacked jurisdiction to conduct the stop and to detain and arrest Hoehn, we find that the facts in this case do not support application of the exclusionary rule. Accordingly, we affirm Hoehn's conviction and sentence.

Affirmed.

Bishop, Judge, concurring.

I agree with the majority's decision to affirm Michael C. Hoehn's conviction and sentence. I write separately because I disagree with its interpretation of Neb. Rev. Stat. § 29-215(3)(c)

(Reissue 2016). Like the Scotts Bluff County District Court, I read the statute to provide law enforcement officers the power and authority to "perform other procedures or functions outside of the law enforcement officer's primary jurisdiction" when they are "directly and solely related to enforcing the laws that concern a person operating . . . any motor vehicle, . . . while under the influence of alcoholic liquor or of any other drug" when "probable cause exists" to believe that is the situation. See *id.*

In affirming the county court's order denying Hoehn's motion to suppress, the district court's November 6, 2022, order stated:

> [Hoehn] claims Officer Rockwell did not have jurisdiction to perform the initial stop. This Court disagrees. Officer Rockwell had probable cause to believe . . . Hoehn was operating a motor vehicle while under the influence of alcoholic liquor sufficient to initiate a stop of the vehicle. The citizen report from dispatch regarding the vehicle being all over the road, observation of throwing a can out the window on two separate occasions, along with the erratic driving observed by the officer create probable cause in this case to believe the crime of driving while under the influence was committed and thus stop the vehicle.
>
> Where probable cause exists, officers are allowed to perform other procedures or functions outside of the law enforcement officer's primary jurisdiction which are directly and solely related to enforcing the laws that concern a person operating or being in the actual physical control of any motor vehicle. [§] 29-215(3)(c). Here Officer Rockwell made a stop outside the city of Minatare limits with a suspected driver under the influence of alcohol operating the motor vehicle. The stop was directly and solely related to enforcing the laws that concern a person operating or being in the actual

physical control of any motor vehicle. The motion to suppress was thus properly overruled.

I agree with the district court's determination that when probable cause exists that a person is operating a motor vehicle while under the influence of alcohol, § 29-215(3)(c) authorizes law enforcement to stop the vehicle even when probable cause occurs outside the officer's primary jurisdiction.

The majority determines, however, that § 29-215(3)(c) does not authorize law enforcement "to arrest or detain an individual outside of the officer's primary jurisdiction even where probable cause exists to believe a person is operating a motor vehicle while under the influence of alcohol or drugs in another jurisdiction." Therefore, the majority concludes that Officer Rockwell's "investigation, stop, and arrest of Hoehn was conducted without jurisdictional authority," and as a result, it was necessary to examine the applicability of the exclusionary rule. The majority declined to apply the exclusionary rule in this instance because "§ 29-215(3) had not been construed by any Nebraska appellate court" and Officer Rockwell's "actions were not deliberate, reckless, or in grossly negligent disregard for Fourth Amendment rights."

If the majority's interpretation of the statute stands, particularly now that § 29-215(3) has been construed, law enforcement would be constrained from intervening in potentially dangerous situations involving drivers under the influence of alcohol or drugs merely because the dangerous situation was taking place outside the officer's primary jurisdiction. Upon personally witnessing such situations, an officer outside the officer's primary jurisdiction will be placed in the difficult position of having to decide whether to intervene, knowing that evidence of unlawful activity may be suppressed, or, alternatively, to not intervene and wait for a law enforcement officer with primary jurisdiction to arrive. Waiting increases the risk of injury to the driver and the general public; this seems contrary to any possible legislative intent. When construing a statute, a court must determine and give effect to the

purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Timothy L. Ashford, PC LLO v. Roses*, 313 Neb. 302, 984 N.W.2d 596 (2023).

As noted by the majority, "[t]o give effect to all parts of a statute, an appellate court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible, and will avoid rejecting as superfluous or meaningless any word, clause, or sentence." *Angel v. Nebraska Dept. of Nat. Resources*, 314 Neb. 1, 12, 988 N.W.2d 507, 516 (2023). When giving effect to all parts of § 29-215 in the present case, I cannot agree with the majority's conclusion that Officer Rockwell's arrest of Hoehn was in violation of that statute.

Section 29-215 contains four subsections. Subsection (4) provides meanings for certain words and is not relevant to the issue of the officer's jurisdiction in this case; no one disputes that Officer Rockwell was outside his primary jurisdiction when the traffic stop occurred. Accordingly, it is the remaining three subsections of § 29-215 that are relevant to my analysis, with particular focus on the introductory language contained in each of those subsections.

When interpreting a statute, the starting point and focus of the inquiry is the meaning of the statutory language, understood in context. *State v. Wines*, 308 Neb. 468, 954 N.W.2d 893 (2021). Section 29-215(1) consists of only one sentence, and it authorizes a law enforcement officer to "perform the functions of that office anywhere *within* his or her primary jurisdiction." (Emphasis supplied.) Section 29-215(2) has an introductory sentence, which is followed by subparts (a) through (d). The introductory sentence for subsection (2) authorizes a law enforcement officer to "perform the functions of his or her office" when the officer is "*beyond* his or her primary jurisdiction" (emphasis supplied) in the circumstances described in subparts (a) through (d). The situations described in subparts (a) through (d) are set forth in the majority's opinion and need not be repeated here.

Notably, the introductory language of § 29-215(3) contains no reference to "within" or "beyond" an officer's primary jurisdiction; rather, it only states that "[w]hen probable cause exists to believe that a person is operating . . . any motor vehicle . . . while under the influence of alcoholic liquor or of any drug," the officer has the "power and authority to do any of the following or any combination thereof[.]" There are no limiting words related to jurisdiction in the introductory language of subsection (3) like there are in subsections (1) and (2). While subsection (1) refers to "within . . . primary jurisdiction" and subsection (2) refers to "beyond . . . primary jurisdiction," the introductory language of subsection (3) refers to "probable cause" and "operating . . . any motor vehicle . . . while under the influence." These differences in the introductory language of each subsection cannot be ignored.

Because the introductory language of § 29-215(3) does not make any reference to "within" or "beyond" an officer's primary jurisdiction, the circumstances described under all subparts of § 29-215(3) should be construed without regard to whether probable cause arose within or beyond an officer's primary jurisdiction. Instead, the focus is on whether probable cause exists to believe a person is driving under the influence of alcohol or drugs. If so, then § 29-215(3)(a) allows for the transport of that person to a facility outside the officer's primary jurisdiction for chemical testing, and § 29-215(3)(b) allows for the administration of a post-arrest test advisement to that person outside the officer's primary jurisdiction. Notably, subparts (a) and (b) involve specific acts by law enforcement that may require cooperation with facilities or services outside the officer's primary jurisdiction.

Section 29-215(3)(c) provides authorization for law enforcement to

> perform other procedures or functions outside of the law enforcement officer's primary jurisdiction which are directly and solely related to enforcing the laws that concern a person operating or being in the actual physical

control of any motor vehicle . . . while under the influ-
ence of alcoholic liquor or of any other drug.
While the majority construes this language as "a grant of
power of the same limiting type set forth" in subparts (a) and
(b), I do not. Instead, I read subpart (c) as a broader catch-
all provision that follows two specific examples of the types
of actions an officer may take beyond the officer's primary
jurisdiction, regardless of whether probable cause developed
within or beyond the officer's jurisdiction. In other words,
under the introductory language of § 29-215(3), if there is
probable cause to believe a person is operating a vehicle
under the influence of alcohol or drugs, whether within or
beyond an officer's primary jurisdiction, a law enforcement
officer has the power and authority to transport the person
to a facility outside the officer's primary jurisdiction for
chemical testing, see § 29-215(3)(a); to administer, outside
the officer's primary jurisdiction, any post-arrest test advise-
ment to the person, see § 29-215(3)(b); and then the catch-all
provision, to "perform other procedures or functions outside
of the law enforcement officer's primary jurisdiction which
are directly and solely related to enforcing the laws that
concern a person operating or being in the actual physical
control of any motor vehicle . . . while under the influence"
of alcohol or drugs, § 29-215(3)(c). I find this reading of the
law gives effect to every provision of the statute, including
consideration of the differences in the introductory language
of subsections (1) through (3). Those differences separate the
authority granted "within" an officer's primary jurisdiction,
the authority granted "beyond" an officer's primary jurisdic-
tion, and the authority granted without regard for whether the
officer is within or beyond the officer's primary jurisdiction
when probable cause exists that a person is driving under the
influence of alcohol or drugs.

Accordingly, I agree with the district court's interpreta-
tion of § 29-215(3) and would have affirmed on that basis.
Further, to the extent the majority has properly construed the

statute and Officer Rockwell's actions were in violation of § 29-215, I disagree with the majority's determination that this statutory violation implicated the Fourth Amendment. See, *Virginia v. Moore*, 553 U.S. 164, 176, 128 S. Ct. 1598, 170 L. Ed. 2d 559 (2008) (arrest prohibited by state law but based on probable cause did not violate Fourth Amendment; "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and . . . while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections"); *Marksmeier v. Davie*, 622 F.3d 896 (8th Cir. 2010) (court need not decide whether officer was acting outside primary jurisdiction under § 29-215 because even if arrest violated Nebraska law, it did not violate Fourth Amendment); *Rose v. City of Mulberry, Arkansas*, 533 F.3d 678 (8th Cir. 2008) (no violation of Fourth Amendment when arrest outside of officer's jurisdiction was based on probable cause). See, also, *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014) (absent constitutional violation, court will normally suppress evidence obtained in violation of rule or statute only if governing law provides that remedy). Section 29-215 provides no such remedy, nor has Hoehn informed this court of any other governing law providing such a remedy.

Regardless, although our reasoning differs, I concur with the majority's ultimate conclusion to affirm Hoehn's conviction and sentence.