# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3074

_____

| | | |
|---|---|---|
| Jeffrey J. Marksmeier, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Randy Dale Davie, individually and in | * | |
| his official capacity as a police officer | * | |
| of the City of Wisner, Nebraska; | * | |
| Mark Delmont, individually and in his | * | |
| official capacity as Cuming County | * | |
| Nebraska deputy sheriff; | * | |
| Lonnie Schultz, individually and in his | * | |
| capacity as police chief of the Village | * | |
| of Beemer, Nebraska, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 9, 2010
Filed: October 8, 2010

_____

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Jeffery J. Marksmeier appeals the district court's[1] adverse grant of summary judgment in his 42 U.S.C. § 1983 action. He also challenges the district court's denial of his motion for additional time to respond to the summary judgment motions and grant of a protective order limiting discovery. We affirm.

I.

Marksmeier resides in Beemer, Nebraska. He is mildly mentally retarded, and, in January 2007, when this incident occurred, he was 23 years old. The defendants in this matter were familiar with Marksmeier due to past contacts with him.

During the evening hours of January 23, 2007,[2] Randy Davie, a police officer for the City of Wisner, contacted Lonnie Schultz, police chief of the Village of Beemer, and requested that if Chief Schultz had any contact with Marksmeier to advise Marksmeier that Officer Davie wished to speak with him. Around 1:45 a.m. on January 24, 2007, Chief Schultz saw Marksmeier in the parking lot of a convenience store in Beemer. Chief Schultz informed him of Officer Davie's request. Marksmeier agreed to meet with Officer Davie in Beemer, but he stated that he would need to travel home before the meeting. Chief Schultz offered Marksmeier a ride, which he accepted. Chief Schultz drove Marksmeier to his residence, remained in the patrol car while Marksmeier entered the apartment, and then drove Marksmeier to the Beemer Police Department to meet with Officer Davie.

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

[2]There is some disagreement about the dates on which these incidents occurred. As we explain later in the opinion, this disagreement is not genuine, and thus we recite the dates that the balance of the record reflects.

After borrowing a micro-cassette recorder from Chief Schultz, Officer Davie began the interrogation of Marksmeier by reading Marksmeier's <u>Miranda</u>[3] rights to him.  Marksmeier then signed a waiver of his <u>Miranda</u> rights, which Officer Davie witnessed and dated January 24, 2007.  The initial focus of the interview was an alleged assault on "SP," a juvenile female.  At first, Marksmeier denied striking SP, but after persistent interrogation, Marksmeier admitted hitting SP.  Officer Davie also questioned Marksmeier about claims SP had made that she had a consensual sexual relationship with Marksmeier.  Marksmeier denied those allegations.

Approximately ten minutes after the interrogation began, Mark Delmont, a deputy sheriff for Cuming County, Nebraska, arrived at the Beemer Police Station.  Deputy Delmont was visiting with Chief Schultz when Officer Davie exited the interrogation room and told them he had been unsuccessful in getting Marksmeier to elaborate about the assault on SP.  Officer Davie asked if Deputy Delmont or Chief Schultz would try talking to Marksmeier.  Deputy Delmont agreed to speak to Marksmeier, and he took over the interrogation.  Marksmeier again admitted hitting SP once.  Minutes later, Marksmeier admitted to Deputy Delmont that he hit SP four times "ever" and struck her two, or possibly three, times in the incident being investigated by the police.

As part of his interrogation procedures, Deputy Delmont took contemporaneous notes and would, throughout the interview, read them to Marksmeier and have Marksmeier initial the notes if he agreed with the statement.  At some point during the interrogation, the cassette tape ran out of space.  When Officer Davie reentered the room, he noticed this and inserted a new tape into the cassette recorder.  Thus part of the interrogation was not recorded.

---

[3]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

Prior to the end of the first tape, Deputy Delmont is heard reciting his first notation—that Marksmeier hit SP four times "ever" and "two maybe three" times in the first part of January. When the second tape begins, Deputy Delmont is heard writing his third note—that Marksmeier hit SP once at a bar in Omaha and two other times at SP's mother's house. Deputy Delmont's notes contain an entry between the two mentioned above that is the focus of this litigation. This second notation was made after the first tape quit recording and before the second recording was started. According to that second notation, which is initialed by Marksmeier, "[JP] and Jeff [Marksmeier] had sex one time but it was her idea. At Jeff's appartment [sic] – about 3 weeks after [KP] hit Jeff." (Appellant's App. 7.) "JP" is SP's sister and was 16 years old at the time of the interrogation but was 15 years old when the alleged sexual contact occurred. "KP" is JP and SP's brother.

On the second tape and after Deputy Delmont finished the third notation, Deputy Delmont reviews the first notation with Marksmeier. Then the following conversation occurred:

Deputy Delmont: "So, you and [SP] never got it on, ever?"
Marksmeier: "Nope."
Deputy Delmont: "You never did the naked noodle dance with her?"
Marksmeier: "Huh-uh."
Deputy Delmont: "Just [JP]. Just [JP], right?"
Marksmeier: "Right."

The interrogation continued with questions about possible prostitution activities of the mother of SP and JP. At the end of the interrogation and recorded on the tape, Officer Davie stated that it was January 24 at 5:08 a.m. and Deputy Delmont's notes also contain the date and time notation.

After the interrogation, Officer Davie arrested Marksmeier. According to the Affidavit of Probable Cause, sworn to on January 25, 2007, Officer Davie arrested Marksmeier for child abuse, sexual assault, and assault in the third degree. The probable cause affidavit recites facts about Marksmeier's hitting of SP and his admission to having sex with JP. A criminal complaint was initially filed charging Marksmeier with sexual assault and child abuse due to the allegations concerning JP; however, later the county attorney dismissed the charges for reasons not explained in the record. Marksmeier was held from the time of his arrest on January 24 until he posted bond on January 31.

After the charges were dropped, Marksmeier brought this section 1983 action against Officer Davie, Deputy Delmont, and Chief Schultz, in their individual and official capacities, alleging that his Fourth and Fourteenth Amendment rights were violated. He also asserted state-law claims for false arrest; false imprisonment; intentional infliction of emotional distress; and libel, slander, and defamation. The defendants moved for summary judgment on all claims. The district court determined that, viewing the evidence in the light most favorable to Marksmeier, there was no genuine issue as to any material fact and the defendants were entitled to summary judgment as a matter of law.

## II.

We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party. See Irving v. Dormire, 586 F.3d 645, 647 (8th Cir. 2009). We will affirm the grant of summary judgment if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Disputes that are not "genuine," or that are about facts that are not "material," will not preclude summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Material facts are those which might affect the outcome of the lawsuit. A dispute over an issue of

fact is 'genuine' if there is sufficient evidence to allow a reasonable jury to find for the non-moving party on that issue." <u>DuBose v. Kelly</u>, 187 F.3d 999, 1000-01 (8th Cir. 1999).

1.  Probable Cause to Arrest

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and thus Officer Davie needed probable cause to believe that Marksmeier committed an offense at the time the arrest was made.  "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments."  <u>Hannah v. City of Overland, Mo.</u>, 795 F.2d 1385, 1389 (8th Cir. 1986).  "In determining whether probable cause exists to make a warrantless arrest, a court will consider whether, based on the totality of the circumstances, the facts would justify a reasonably cautious police officer's belief that the individual arrested has committed or was committing an offense."  <u>Anderson v. Cass County, Mo.</u>, 367 F.3d 741, 745 (8th Cir. 2004).

Marksmeier maintains that Officer Davie did not have probable cause to arrest him for having sexual contact with JP because, when the record is construed in the light most favorable to him, it "support[s] Marksmeier's claims [that Deputy Delmont fabricated the notation and Marksmeier's confession] rather than refute[s] them." (Appellant's Br. 14.)  Our obligation is to construe the facts in the light most favorable to Marksmeier, but we are not bound to accept Marksmeier's version of the events when his version "is blatantly contradicted by the record, so that no reasonable jury could believe it."  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

Marksmeier argues that Deputy Delmont's question of whether Marksmeier had ever "got it on" with SP or did the "naked noodle dance" with SP and Deputy Delmont's subsequent confirmation that it was "[j]ust [JP], right?" does not, in

-6-

context, constitute an admission by Marksmeier that he engaged in sexual activity with JP. Having reviewed the tapes of the interrogation and Deputy Delmont's notes taken during the interrogation, we cannot find that there is a genuine dispute over whether Marksmeier admitted having sexual contact with JP, a minor. A considerable amount of the interrogation involved allegations of sexual activity, and Marksmeier demonstrated no difficulty in understanding the context of those questions. Furthermore, the record shows that the initial admission to having sexual contact with JP occurred between the end of the first tape and the beginning of the second tape. During that unrecorded time, Deputy Delmont wrote out the statement that "[JP] and Jeff [Marksmeier] had sex one time but it was her idea. At Jeff's appartment [sic] – about 3 weeks after [KP] hit Jeff." There is no dispute that Marksmeier initialed this statement. The tapes show that as Deputy Delmont wrote additional statements during the interrogation, he presented each one to Marksmeier for him to initial if he agreed with it. Based on this evidence, no reasonable jury would be able to find that Deputy Delmont fabricated the notation or Marksmeier's confession. Likewise, a reasonable officer would believe that Marksmeier had committed violations of Nebraska's child abuse statute, see Neb. Rev. Stat. § 28-707(1)(e) ("A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be placed in a situation to be sexually abused . . . ."), and sexual assault statute, see Neb. Rev. Stat. § 28-319(1)(c) ("Any person who subjects another person to sexual penetration . . . when the actor is nineteen years of age or older and the victim is at least twelve but less than sixteen years of age is guilty of sexual assault in the first degree.").

Moreover, according to the probable cause affidavit, Officer Davie also arrested Marksmeier for assault in the third degree for hitting SP "several times." At oral argument, Marksmeier's counsel claimed that the hitting of SP was not the reason Officer Davie arrested Marksmeier. However, Marksmeier's counsel does not point to anything in the record to support that assertion. Marksmeier's repeated admissions to hitting SP, which were captured by the recording, also provided probable cause to

justify the warrantless arrest. Accordingly, the district court did not err in concluding that Marksmeier's constitutional rights were not violated by his arrest as there was probable cause to believe that Marksmeier had committed a violation of Nebraska law in his interactions with both SP and JP.

## 2. Jurisdiction to Arrest

Next, Marksmeier argues that Officer Davie, who was employed by both Wisner and Beemer, was not "on duty" for Beemer at the time of the arrest, and therefore he was acting outside of his primary jurisdiction when he arrested Marksmeier. Because Officer Davie was not acting as a Beemer police officer at the time, Marksmeier claims that Officer Davie violated Nebraska Revised Statute section 29-215, which limits the authority of an officer to enforce the laws of the state only within the primary jurisdiction of that officer. See Neb. Rev. Stat. § 29-215(1).

Despite Marksmeier's contention, it is unnecessary to decide whether Officer Davie was acting within his primary jurisdiction at the time he arrested Marksmeier because even if the arrest violated Nebraska law, it did not violate the Fourth Amendment. In Rose v. City of Mulberry, Ark., 533 F.3d 678 (8th Cir. 2008), we acknowledged that while "[o]ur cases on this issue have been mixed," the Supreme Court clarified in Virginia v. Moore, 553 U.S. 164 (2008), "that a police officer who makes an arrest that is based on probable cause but who is prohibited by state law from doing so does not violate the Fourth Amendment." See Rose, 533 F.3d at 679-80. Probable cause necessary to effect a warrantless arrest may be found where "the individual arrested has committed . . . an offense." See Anderson, 367 F.3d at 745. Even assuming Nebraska law limited Officer Davie's geographic jurisdiction, Officer Davie had probable cause to believe Marksmeier committed a sexual assault on JP and a physical assault on SP, thus no Fourth Amendment violation occurred. See Moore, 553 U.S. at 176 ("[W]hile States are free to regulate . . . arrests however they desire, state restrictions do not alter the Fourth Amendment's protections."). Because this

-8-

alleged violation of Nebraska law is not a violation of a constitutionally protected federal right which is required in a section 1983 action, the district court properly granted summary judgment on the claim. See Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009) ("The essential elements of a § 1983 claim . . . [include] that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right.").

3. Probable Cause Hearing

Marksmeier's next contention on appeal is that his arrest and detention were unconstitutional because he did not receive a prompt probable cause hearing. See Gerstein v. Pugh, 420 U.S. 103, 126 (1975) ("[T]he Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite for detention . . . ."). The factual basis with respect to this claim is not genuinely in dispute, and therefore the district court's entry of summary judgment was appropriate.

Officer Davie's affidavit of probable cause lists the date of arrest as January 23, 2007. Marksmeier argues that because he did not receive a hearing on the probable cause affidavit until January 25, he did not receive a "prompt" hearing as required by the Fourth Amendment. See Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 56-57 (1991) (noting that a judicial probable cause determination should generally be made within 48 hours of warrantless arrest).

Through affidavits, Officer Davie, Deputy Delmont, and Chief Schultz all agree that the arrest occurred on January 24, not on January 23. Officer Davie explained that he mistakenly listed the arrest date as January 23 because that was the date his shift started. Notably, the balance of the evidence in the record, including the Miranda waiver form, the recording of the interrogation, and Deputy Delmont's notes, all support an arrest date of January 24. Furthermore, Marksmeier does not assert in his affidavit that the date of his arrest was January 23. Instead, he relies solely on the

January 23 date noted on the probable cause affidavit to support this claim. Again, this purported discrepancy does not constitute a genuine issue because no reasonable jury could find that there is sufficient evidence to believe the actual date of arrest was January 23. See DuBose, 187 F.3d at 1000-01. Therefore, the district court did not err in granting summary judgment on this claim.

4. Official Capacity Claims[4]

Marksmeier states that the Nebraska Supreme Court's decision in Brandon v. Cnty. of Richardson, 261 Neb. 636 (2001), held that "similar tactics and actions" as he experienced "were so outrageous as a matter of law and were not to be condoned in a civilized society." (Appellant's Br. 28.) Thus, Marksmeier argues, the various municipalities who employ the defendants have a custom or policy of allowing improper interrogation techniques, arrests without probable cause, and arrests outside an officer's proper jurisdiction to occur.

When a plaintiff is seeking to impose section 1983 liability on a local government body, the plaintiff must show that there is an official policy or a widespread custom or practice of unconstitutional conduct that caused the deprivation of a constitutional right. See Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978). Marksmeier fails to allege any facts that would support a claim that any of the government entities had a policy of allowing unconstitutional interrogations or arrests or that any of the defendants set the policies for their respective entities. See Mettler

---

[4]Although Marksmeier's brief states that he is also appealing the district court's grant of summary judgment on his state-law claims, the brief does not contain argument on those state-law claims. Accordingly, he has waived this issue on appeal, and we decline to consider whether the district court's grant of summary judgment as to the state-law claims was proper. See Fed. R. App. P. 28(a)(9)(A) (mandating that appellant's brief include contentions, reasons for them, and citations to authorities and parts of record on which appellant relies).

-10-

v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (holding that to establish the existence of a policy, plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters"). Further, other than the single incident at issue in this case, Marksmeier does not point to any incidents or claims that would show that the entities maintained a custom of violating constitutional rights. See McGautha v. Jackson Cnty., 36 F.3d 53, 56-57 (8th Cir. 1994) (holding that liability for unconstitutional custom or usage cannot arise from a single act). The district court's grant of summary judgment to the defendants in their official capacities was correct.

5. Motion for Enlargement of Time

After Deputy Delmont and Officer Davie filed their motions for summary judgment based on qualified immunity, Marksmeier's counsel sought, under Federal Rule of Civil Procedure 56(f), an extension of time in which to respond to the motions in order to complete further discovery. The district court denied the motion, holding that Marksmeier "ha[d] not demonstrated what facts, necessary to establish a genuine issue of material fact, further discovery might unveil." (District Ct. Order 2, June 24, 2009, ECF No. 29.)

We review a district court's denial of a motion filed under Rule 56(f) for abuse of discretion. See Elnashar v. Speedway SuperAmerica, LLC, 484 F.3d 1046, 1054 (8th Cir. 2007). "Under Rule 56(f), a party opposing summary judgment may 'seek a continuance and postpone a summary judgment decision,' but 'the party opposing summary judgment is required to file an affidavit with the district court showing what specific facts further discovery might uncover.'" Anuforo v. C. I. R., No. 09-2375, 2010 WL 3023663, at *6 (8th Cir. Aug. 4, 2010) (quoting Roark v. City of Hazen, 189 F.3d 758, 762 (8th Cir. 1999)). Although Marksmeier's counsel filed an affidavit, the affidavit merely stated that "discovery in the form of depositions of at least the Defendants is necessary to test the veracity of and refute the allegations made in the

affidavits of Defendant Delmont and Defendant Davie in support of their respective Motions for Summary Judgment." (Bracht Aff. 2-3, ECF No. 24.) Because the affidavit failed to meet Rule 56(f)'s requirement that Marksmeier "show[], for specified reasons, [he] cannot present facts essential to justify [his] opposition," Fed. R. Civ. P. 56(f), to the summary judgment motions, the district court did not abuse its discretion in denying Marksmeier's motion for an extension of time to conduct further discovery.

6. Motion for Protective Order

The district court granted Deputy Delmont's motion for a protective order and limited discovery to issues pertaining to: (1) the defendants' claims that they were entitled to qualified immunity; (2) the existence of a custom or policy of any of the municipalities that could result in liability; and (3) the availability of sovereign immunity under Nebraska state law. "Appellate review of a district court's discovery rulings is 'both narrow and deferential.' Relief will be granted 'on the basis of erroneous discovery [rulings] only where the errors amount to a gross abuse of discretion resulting in fundamental unfairness.'" Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 360 (8th Cir. 2003) (quoting Moran v. Clarke, 296 F.3d 638, 650 (8th Cir. 2002)).

Generally, qualified immunity operates to protect governmental officials not only from the burdens of trial but also from the burdens of discovery. See Behrens v. Pelletier, 516 U.S. 299, 308 (1996) ("[T]he [qualified immunity] defense is meant to give government officials a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery . . . , as inquiries of this kind can be peculiarly disruptive of effective government.'" (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). The district court's order did not preclude Marksmeier from seeking discovery on those issues relevant to the question of qualified immunity, including whether the facts supported by the record and viewed in the light most

favorable to Marksmeier supported a claim of a constitutional violation. Thus, the district court did not abuse its substantial discretion in granting the protective order.

III.

Accordingly, we affirm[5] the district court's grant of summary judgment to the defendants, its denial of the motion for enlargement of time, and its grant of the protective order.

_____

<hr>

[5]On the basis of our affirmance of the district court's actions in this case, including the grant of summary judgment, we find Marksmeier's procedural and substantive due process claims to be meritless.

-13-