Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:08 PM CDT

State of Nebraska, appellee, v.
Michael C. Hoehn, appellant.

___ N.W.3d ___

Filed May 17, 2024.    No. S-22-885.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Search and Seizure.** The Fourth Amendment protects against unreasonable searches and seizures.

3. **Constitutional Law: Search and Seizure: Evidence.** Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment generally cannot be used in a criminal proceeding against the victim of the illegal search and seizure.

4. **Constitutional Law: Investigative Stop: Arrests: Probable Cause.** An investigatory stop supported by reasonable suspicion and an arrest justified by probable cause do not violate the Fourth Amendment.

5. **Constitutional Law: Police Officers and Sheriffs: Jurisdiction.** A law enforcement officer's statutory power and authority to enforce laws outside of the officer's primary jurisdiction does not implicate the Fourth Amendment or article I, § 7, of the Nebraska Constitution.

6. **Constitutional Law: Police Officers and Sheriffs: Jurisdiction: Investigative Stops: Arrests: Evidence.** A law enforcement officer's jurisdictional power and authority to make a stop or arrest is irrelevant to the admissibility, under the Fourth Amendment and article I, § 7, of the Nebraska Constitution, of the evidence obtained from the stop or arrest.

7. **Appeal and Error.** If an appellee wants the appellate court to review an allegedly erroneous determination made by the district court sitting as an appellate court, it should cross-appeal to preserve the issue.

8. ____. A party cannot complain of an error the party invited the court to commit.

Petition for further review from the Court of Appeals, Bishop, Arterburn, and Welch, Judges; on appeal thereto from the District Court for Scotts Bluff County, Andrea D. Miller, Judge; on appeal thereto from the County Court for Scotts Bluff County, Kris D. Mickey, Judge. Judgment of Court of Appeals affirmed.

Bell Island, of Island Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, Austin N. Relph, and Braden Dvorak, Senior Certified Law Student, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## I. INTRODUCTION

Following the county court's denial of a motion to suppress evidence from his stop and arrest, the defendant was convicted of driving under the influence (DUI). The district court affirmed the conviction on the ground that the arresting officer had jurisdictional authority to make the stop and arrest pursuant to Neb. Rev. Stat. § 29-215(3)(c) (Reissue 2016). The Nebraska Court of Appeals disagreed with the district court's interpretation of § 29-215(3)(c) and found that the officer lacked jurisdictional authority to make the stop and arrest.[1] The Court of Appeals held that under the good faith exception to the Fourth Amendment's exclusionary rule, the defendant's conviction, based on the evidence from his stop and arrest,

---

[1] See *State v. Hoehn*, 32 Neb. App. 446, 999 N.W.2d 599 (2023).

did not violate the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution.[2]

We granted further review. For reasons different than those stated by either the Court of Appeals or the district court, we affirm the defendant's conviction based on the evidence derived from the stop and arrest. We hold that it is the lack of reasonable suspicion or probable cause that renders a warrantless search and seizure unreasonable for purposes of the Fourth Amendment's exclusionary rule, not the law enforcement officer's jurisdictional authority under state law.

## II. BACKGROUND

### 1. Facts Leading to Arrest

In May 2021, Officer Matt Rockwell of the Minatare Police Department left the city limits of Minatare, Nebraska, after a citizen reported that a white pickup "was all over the roadway." After leaving his primary jurisdiction, Rockwell observed a white pickup make a "wide turn" onto a highway heading east. Rockwell observed the pickup straddling the centerline and trash coming from the driver's-side window.

Rockwell activated his vehicle's lights and began following the pickup. Rockwell "thought there was going to be an accident" after he watched the pickup turn into oncoming traffic and down into the grass median. The driver "accelerated really hard . . . throwing grass and dirt up . . . away from the pickup."

After driving back up onto the highway and "accelerat[ing] rapidly," the pickup pulled over to the right side of the highway and stopped. Rockwell identified the driver as Michael C. Hoehn. Rockwell observed Hoehn had "[s]lurred speech, bloodshot, watery eyes" and detected "a strong odor of an alcoholic beverage coming out of the vehicle."

Rockwell administered a preliminary breath test and other field sobriety tests, which Hoehn failed, and then Rockwell

---

[2] See *id.*

arrested Hoehn for DUI. These events occurred in Scotts Bluff County, and the State does not dispute that "the above events, including the pursuit and stop of the vehicle, occurred on roadways outside" of Minatare.[3]

Hoehn was charged in Scotts Bluff County Court with first-offense DUI with a blood alcohol content of .15 or more, a Class W misdemeanor.

### 2. MOTION TO SUPPRESS

Hoehn filed a motion to suppress "all fruits of the illegal search and seizure, and his subsequent arrest." He alleged in the motion that the evidence "was unlawfully seized without a warrant and without probable cause in violation of the Fourth and Fourteenth Amendment of the U.S. Constitution and also Art. I §7 of the Nebraska Constitution, and all applicable statutes."

### (a) Arguments at Suppression Hearing

At the suppression hearing, Rockwell testified to the facts set forth above. During direct examination, defense counsel told the county court: "[W]e're going to ask just to limit this to the stop and arrest. I don't think anything after that is necessary for the motion to suppress. We'll withdraw anything beyond that point." Following Rockwell's testimony, the following exchange occurred:

> [The Court:] I would entertain your argument at this time, counsel.
>
> [Defense counsel:] Your Honor, I think that as we discussed, whether or not they have authority and whether or not they made a proper exception to the warrant requirement, I think in this instance there's no demonstration of that proper authority.
>
> State vs. Oerlich — and, unfortunately, I don't know how — I think it's O-e-r-l-i-c-h, but I am not positive — I think demonstrates here that there is insufficient

---

[3] Brief for appellee in support of petition for further review at 4.

showing in which they were authorized to make this stop, Your Honor.

. . . .

[The State:] Yeah . . . I just went ahead and put every-thing on because the motion to suppress talked about not having a warrant, which, of course, you don't need a warrant to make a traffic stop.

The guy is driving drunk. He's all over the road, and he's throwing beer cans out the window. That's a no-brainer. As far as the warrant issue, he consented to a search and voluntarily agreed to give a sample of his blood.

That's an exception to the warrant requirement.

### (b) *State v. Ohlrich*

While not further discussed by the parties at the hearing, in *State v. Ohlrich*,[4] the Court of Appeals reversed the defend-ant's conviction and remanded the cause with directions for the trial court to grant the defendant's motion to suppress evidence derived from his arrest because there was insuffi-cient evidence of an interlocal agreement under § 29-215(2)(d) granting the officer "authority" to execute the warrantless arrest that occurred outside of his primary jurisdiction. The defendant had alleged the evidence obtained after his arrest was "'fruit of the tree of his illegal arrest.'"[5] The Court of Appeals agreed.

### (c) County Court's Decision

Following the parties' arguments at the hearing on Hoehn's motion to suppress, the county court pronounced it believed the State had "proper authority" to stop and arrest Hoehn and that there was "probable cause" to do so:

[A]s to the stop and arrest as argued by counsel, I do find the state had proper authority to make a traffic

---

[4] *State v. Ohlrich*, 20 Neb. App. 67, 74, 817 N.W.2d 797, 804 (2012).

[5] *Id.* at 71, 817 N.W.2d at 801.

stop upon observing the driving through the median, the taking the wide turn, the driving across the center line next to the median. The odor of alcoholic beverage, his speech being slurred, his eyes bloodshot and watery, his inability to complete the field sobriety tests . . . as well as the preliminary breath test that was administered, I find there was sufficient probable cause to — for the arrest.

On that basis I find that there is no merit to the motion to suppress and it should be and hereby is overruled.

The county court set forth in its written order: "A careful examination of the evidence concerning the stop and arrest of [Hoehn] shows the motion to suppress is without merit. There was sufficient evidence justifying the traffic stop, and the arrest is supported by ample evidence of probable cause."

### 3. Stipulated Trial and Sentencing

Pursuant to a plea agreement, the State amended the charge to first-offense DUI with a blood alcohol content of .08 or more, also a Class W misdemeanor, and said it would not oppose a sentence of probation. Further, the parties agreed to a bench trial upon the transcript of the suppression hearing and stipulated that a blood test produced a result of ".245."

In the stipulation, defense counsel objected to the evidence "based on his Motion to Suppress." During the stipulated bench trial, Hoehn renewed his motion to suppress, stating: "And just before we start[,] I'd just make my objection on the Fourth and Fourteenth Amendment, similar provisions of the Nebraska Constitution, as addressed in the motion to suppress hearing on August 16th, Your Honor." The court overruled the objection.

The court found Hoehn guilty of the charged offense and sentenced him to 12 months' probation, 40 hours of community service, a $500 fine, and a 60-day license revocation, along with an order authorizing an ignition interlock permit.

### 4. Appeal to District Court

Hoehn timely appealed to the district court, assigning that the county court erred in its decision to overrule his motion to suppress and that there was insufficient evidence to sustain his conviction. While Hoehn's brief is not in our record, the district court's written order states that Hoehn argued on appeal that Rockwell did not have jurisdictional authority to perform the traffic stop. Also, the district court characterized Hoehn's motion to suppress as "challeng[ing] the officer[']s authority to stop [Hoehn] outside of his primary jurisdiction." The district court thus addressed § 29-215.

### (a) § 29-215

Section 29-215 generally describes that an officer has "the power and authority to enforce the laws of this state . . . anywhere within his or her primary jurisdiction" and identifies circumstances when a law enforcement officer who is "beyond his or her primary jurisdiction" has "the power and authority to enforce the laws of this state." Section 29-215 provides:

(1) A law enforcement officer has the power and authority to enforce the laws of this state and of the political subdivision which employs the law enforcement officer or otherwise perform the functions of that office anywhere within his or her primary jurisdiction.

(2) Any law enforcement officer who is within this state, but beyond his or her primary jurisdiction, has the power and authority to enforce the laws of this state or any legal ordinance of any city or incorporated village or otherwise perform the functions of his or her office, including the authority to arrest and detain suspects, as if enforcing the laws or performing the functions within his or her primary jurisdiction in the following cases:

(a) Any such law enforcement officer, if in a fresh attempt to apprehend a person suspected of committing a felony, may follow such person into any other jurisdiction in this state and there arrest and detain such person

and return such person to the law enforcement officer's primary jurisdiction;

(b) Any such law enforcement officer, if in a fresh attempt to apprehend a person suspected of committing a misdemeanor or a traffic infraction, may follow such person anywhere in an area within twenty-five miles of the boundaries of the law enforcement officer's primary jurisdiction and there arrest and detain such person and return such person to the law enforcement officer's primary jurisdiction;

. . . .

(d) Any municipality or county may, under the provisions of the Interlocal Cooperation Act or the Joint Public Agency Act, enter into a contract with any other municipality or county for law enforcement services or joint law enforcement services. Under such an agreement, law enforcement personnel may have such enforcement authority within the jurisdiction of each of the participating political subdivisions if provided for in the agreement. Unless otherwise provided in the agreement, each participating political subdivision shall provide liability insurance coverage for its own law enforcement personnel as provided in section 13-1802.

(3) When probable cause exists to believe that a person is operating or in the actual physical control of any motor vehicle, motorboat, personal watercraft, or aircraft while under the influence of alcoholic liquor or of any drug or otherwise in violation of section 28-1465, 28-1466, 28-1472, 37-1254.01, 37-1254.02, 60-4,163, 60-4,164, 60-6,196, 60-6,197, 60-6,211.01, or 60-6,211.02, the law enforcement officer has the power and authority to do any of the following or any combination thereof:

(a) Transport such person to a facility outside of the law enforcement officer's primary jurisdiction for appropriate chemical testing of the person;

(b) Administer outside of the law enforcement officer's primary jurisdiction any post-arrest test advisement to the person; or

(c) With respect to such person, perform other procedures or functions outside of the law enforcement officer's primary jurisdiction which are directly and solely related to enforcing the laws that concern a person operating or being in the actual physical control of any motor vehicle, motorboat, personal watercraft, or aircraft while under the influence of alcoholic liquor or of any other drug or otherwise in violation of section 28-1465, 28-1466, 28-1472, 37-1254.01, 37-1254.02, 60-4,163, 60-4,164, 60-6,196, 60-6,197, 60-6,211.01, or 60-6,211.02.

### (b) District Court's Decision

The district court concluded that, pursuant to § 29-215(3)(c), when probable cause exists, officers have authority to perform stops and arrests outside of their primary jurisdiction that are solely related to enforcing laws that concern a person operating or in actual physical control of any motor vehicle. The district court concluded that because Rockwell had probable cause to believe Hoehn was operating a motor vehicle under the influence and the stop was solely related to his operation of a motor vehicle, Rockwell had jurisdictional authority to stop and arrest Hoehn, and that the motion to suppress was properly overruled. The court rejected Hoehn's argument that there was insufficient evidence to sustain the conviction.

### 5. Court of Appeals

### (a) Issues Raised on Appeal

Hoehn appealed the district court's determination to the Court of Appeals. He assigned as error that the district court erred in affirming the county court's denial of his motion to suppress. He did not assign as error the county court's determination that the evidence was insufficient to support his conviction. Hoehn argued that observation of his erratic driving was insufficient to establish probable cause and that

Rockwell could not leave his jurisdiction without probable cause pursuant to § 29-215(3). He argued that even if there was probable cause for his arrest, § 29-215(3) authorizes only postarrest actions and does not authorize an officer to make a stop outside of the officer's jurisdiction. Hoehn did not argue that § 29-215 independently granted him a statutory right to suppress evidence in a criminal trial when it is violated. Rather, he indicated his right to suppress the evidence derived from the stop was based solely on the Fourth Amendment and article I, § 7, of the Nebraska Constitution.

The State argued on appeal that the district court's interpretation of § 29-215(3) was correct and encouraged the Court of Appeals to affirm for the same reasons stated by the district court. The State asserted that pursuant to § 29-215(3), if probable cause exists to believe an individual is operating a motor vehicle while under the influence, law enforcement has the authority to stop the individual outside of the officer's primary jurisdiction. The State also asserted there was probable cause for Rockwell to believe Hoehn was driving while under the influence. The State did not suggest the district court erred by considering Rockwell's power and authority under § 29-215, because that issue was inadequately raised to, and not determined by, the county court. To the contrary, the State told the Court of Appeals at oral arguments that Hoehn had sufficiently raised § 29-215 to the county court.

### (b) Court of Appeals' Decision

The Court of Appeals found that Rockwell had probable cause to stop Hoehn's vehicle. Nevertheless, it agreed with Hoehn's reading of § 29-215(3)(c) and disagreed with the district court's interpretation of the statute. The Court of Appeals held that, even with probable cause, the stop was outside of Rockwell's jurisdictional authority as described by § 29-215.

### (i) Construction of § 29-215

Applying the ejusdem generis canon of construction, the Court of Appeals interpreted § 29-215(3)(c) as a grant of

power of the same limiting type as those powers set forth in
§ 29-215(3)(a) and (b), which allow an officer to transport a
person to a facility for chemical testing and to administer a
postarrest test advisement outside the officer's primary juris-
diction. In other words, the majority interpreted § 29-215(3)(c)
"as granting other procedural-type powers relating to enforcing
laws outside the officer's primary jurisdiction incident to an
arrest or detention."[6]

### (ii) Fourth Amendment and
State v. Cuny

The Court of Appeals next addressed whether the Fourth
Amendment applies to a violation of § 29-215 and, if so,
whether the exclusionary rule required the suppression of
evidence obtained from the stop and arrest of Hoehn. Relying
on *State v. Cuny*,[7] the court determined that a violation of the
jurisdictional requirements in § 29-215 triggers the Fourth
Amendment, thereby implicating the exclusionary rule.

*Cuny* involved the stop of a vehicle in Nebraska by out-of-
state officers, who had observed the vehicle in their jurisdic-
tion and followed it beyond the border. The driver was con-
victed of misdemeanor DUI, following the denial of a motion
to suppress based on the officers' alleged lack of power and
authority to make the stop and arrest. We explained that the
power of a police officer under common law was limited to
the boundaries of the governmental unit by which the officer
was appointed, unless acting in "fresh and continued pursuit"
of a suspected felon who had committed an offense in the
officer's presence and within the officer's territorial jurisdic-
tion.[8] Because the defendant was charged and convicted of a
misdemeanor, this common-law "fresh pursuit" exception did
not apply and any authority of the officers must derive from
statutory law. We held that § 29-215 applies only to Nebraska

---

[6] *State v. Hoehn, supra* note 1, 32 Neb. App. at 461, 999 N.W.2d at 611.

[7] *State v. Cuny*, 257 Neb. 168, 595 N.W.2d 899 (1999).

[8] See *id*. at 172, 595 N.W.2d at 902.

law enforcement officers and does not authorize an out-of-state police officer to stop and arrest a suspect for a misdemeanor DUI inside Nebraska. We did not otherwise address the meaning of the various subsections of the statute. We concluded that the evidence obtained from the stop and arrest of the defendant, which "was the fruit of an illegal search or seizure, in violation of the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution, [was] inadmissible in a state prosecution, and must be excluded."[9]

The Court of Appeals acknowledged that this court's decision in *Cuny* lacked any analysis regarding the interplay between a statutory jurisdictional violation under § 29-215 and the Fourth Amendment. It further recognized the existence of case law from other jurisdictions holding that statutory violations do not implicate an individual's Fourth Amendment rights. Nevertheless, the majority elected to follow this court's holding in *Cuny*, because of its factual similarities and to avoid reaching an outcome inconsistent with our precedent. Thus, the Court of Appeals held that Hoehn's rights under the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution were violated, invoking the exclusionary rule.

### (iii) Good Faith Exception to Exclusionary Rule

Lastly, the Court of Appeals determined that the good faith exception to the exclusionary rule applied.[10] Because the exclusionary rule was created to deter police misconduct rather than to punish errors,[11] it does not apply to objectively reasonable law enforcement activity.[12] Because § 29-215(3)(c) had not previously been construed by an appellate court at the

---

[9] See *id.* at 173, 595 N.W.2d at 903.

[10] See, e.g., *State v. Simons*, 315 Neb. 415, 996 N.W.2d 607 (2023); *State v. Hatfield*, 304 Neb. 66, 933 N.W.2d 78 (2019).

[11] See *State v. Kruse*, 303 Neb. 799, 931 N.W.2d 148 (2019).

[12] See *State v. Hoerle*, 297 Neb. 840, 901 N.W.2d 327 (2017).

time of the violation, the Court of Appeals held that "Rockwell could have reasonably believed that he had jurisdictional authority to stop and arrest Hoehn."[13] And because Rockwell had probable cause justifying the stop and arrest, the Court of Appeals determined Rockwell's actions were not carried out in a deliberate, reckless, or grossly negligent disregard of Hoehn's Fourth Amendment rights. Accordingly, albeit on different grounds from those assigned by the district court, the Court of Appeals affirmed the district court's decision, affirming Hoehn's conviction in the county court based on evidence derived from the stop and arrest.

### (iv) Concurring Opinion

In a concurring opinion, Judge Bishop agreed with the district court's interpretation of § 29-215(3)(c) and disagreed with the majority opinion's reading of the statute. Judge Bishop observed that § 29-215(3) makes no reference to whether the officer is within or beyond the officer's primary jurisdiction. Thus,

> if there is probable cause to believe a person is operating a vehicle under the influence of alcohol or drugs, whether within or beyond an officer's primary jurisdiction, a law enforcement officer has the power and authority to transport the person to a facility outside the officer's primary jurisdiction for chemical testing, see § 29-215(3)(a); to administer, outside the officer's primary jurisdiction, any post-arrest test advisement to the person, see § 29-215(3)(b); and then the catch-all provision, to "perform other procedures or functions outside of the law enforcement officer's primary jurisdiction which are directly and solely related to enforcing the laws that concern a person operating or being in the actual physical control of any motor vehicle . . . while under the influence" of alcohol or drugs, § 29-215(3)(c).[14]

---

[13] *State v. Hoehn, supra* note 1, 32 Neb. App. at 465, 999 N.W.2d at 613.

[14] *Id.* at 471, 999 N.W.2d at 616 (Bishop, J., concurring).

Judge Bishop further stated that even if the majority properly construed § 29-215(3), she disagreed with its determination that a violation of the statute implicates the Fourth Amendment. Relying on cases such as *Virginia v. Moore*[15] and *Marksmeier v. Davie*,[16] Judge Bishop explained that state restrictions do not alter Fourth Amendment protections.

We granted the State's and Hoehn's petitions for further review.

### III. ASSIGNMENTS OF ERROR

Hoehn assigns that the Court of Appeals erred in "determining the exclusionary rule did not apply" to Rockwell's allegedly unconstitutional stop outside of his primary jurisdiction.

The State assigns that the Court of Appeals erred in (1) addressing the merits of Hoehn's argument because he allegedly did not raise it to the county court, (2) its interpretation of § 29-215(3)(c), and (3) determining that a violation of § 29-215 implicates the Fourth Amendment.

### IV. STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[17] Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[18]

### V. ANALYSIS

At issue is whether the Court of Appeals was correct in holding that the district court did not err in affirming the

---

[15] *Virginia v. Moore*, 553 U.S. 164, 128 S. Ct. 1598, 170 L. Ed. 2d 559 (2008).

[16] *Marksmeier v. Davie*, 622 F.3d 896 (8th Cir. 2010).

[17] *State v. Simons, supra* note 10.

[18] *Id*.

county court's ruling denying Hoehn's motion to suppress and overruling Hoehn's renewal of the motion at trial based "on the Fourth and Fourteenth Amendment, similar provisions of the Nebraska Constitution." Hoehn's sole argument on further review is that the Court of Appeals erred in determining it was reasonable for an officer in Rockwell's position to mistakenly believe he had the statutory power and authority to make the stop and that therefore, it serves no deterrent purpose to apply the exclusionary rule. He does not argue that the Court of Appeals erred in determining Rockwell had probable cause to make the stop.

[2-4] The Fourth Amendment protects against unreasonable searches and seizures.[19] Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment generally cannot be used in a criminal proceeding against the victim of the illegal search and seizure.[20] However, an investigatory stop supported by reasonable suspicion and an arrest justified by probable cause do not violate the Fourth Amendment.[21] Article I, § 7, of the Nebraska Constitution is phrased identically to the Fourth Amendment. We have previously declined to afford greater protections against governmental searches and seizures under the Nebraska Constitution than its federal counterpart.[22] Hoehn makes no argument that we should do so here.

[5] In line with the U.S. Supreme Court's holding in 2008 in *Moore*,[23] we hold that a law enforcement officer's statutory power and authority to enforce laws outside of the officer's primary jurisdiction does not implicate the Fourth Amendment or article I, § 7, of the Nebraska Constitution. We thus find merit to the State's assignment that the Court of Appeals

---

[19] See *id.*

[20] See *id.*

[21] See *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022).

[22] See *State v. Havlat*, 222 Neb. 554, 385 N.W.2d 436 (1986).

[23] *Virginia v. Moore*, *supra* note 15.

erred in determining a violation of § 29-215 implicates the Fourth Amendment. Nevertheless, we affirm the Court of Appeals' ultimate determination that the evidence obtained from the stop and arrest was properly admitted at trial and that Hoehn's conviction should stand.

## 1. *Virginia v. Moore*

In *Moore*, the U.S. Supreme Court clarified that whether a search is reasonable under the Fourth Amendment "has never depend[ed] on the law of the particular State in which the search occurs."[24] The Court accordingly held that where there was probable cause for the defendant's arrest for driving with a suspended license, the trial court properly denied the defendant's motion to suppress evidence found in the search pursuant to that arrest, even though the arresting officer lacked authority to make the arrest because driving with a suspended license was not an arrestable offense under state law.[25]

The Court explained that the reasonableness of a search and seizure under the Fourth Amendment is analyzed "'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'"[26] "In a long line of cases," said the Court, it has been held that "when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable."[27] This test

---

[24] *Id*., 553 U.S. at 172 (internal quotation marks omitted). See, *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996); *California v. Greenwood*, 486 U.S. 35, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988); *Cooper v. California*, 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967).

[25] See *Virginia v. Moore, supra* note 15.

[26] *Id*., 553 U.S. at 171 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999)).

[27] *Virginia v. Moore, supra* note 15, 553 U.S. at 171.

of reasonableness "serves interests that have long been seen as sufficient to justify the seizure," ensuring that "a suspect appears to answer charges and does not continue a crime, and it safeguards evidence and enables officers to conduct an in-custody investigation."[28] It also serves the "'essential interest in readily administrable rules'" and the "need for a bright-line constitutional standard."[29]

The Court explained that the Fourth Amendment was never understood as "a redundant guarantee of whatever limits on search and seizure legislatures might have enacted"[30] and, "if anything," reflected a skepticism of the "index of reasonableness" set forth under those laws.[31] Furthermore, said the Court, nothing suggests the Fourth Amendment was intended to incorporate subsequently enacted statutes. Even in states with similar constitutional provisions prohibiting unreasonable searches and seizures, "citizens who claimed officers had violated state restrictions on arrest did not claim that the violations also ran afoul of the state constitutions."[32]

Additional state protections of privacy beyond what the Fourth Amendment requires are exclusively matters of state law.[33] Indeed, to extend Fourth Amendment protections, which often include the exclusionary rule, to violations of state laws protecting "individual privacy and dignity more than the Fourth Amendment requires,"[34] would take control away from states to decide what remedy should attach to such state law violations.

---

[28] *Id*., 553 U.S. at 173.

[29] *Id*., 553 U.S. at 175.

[30] *Id*., 553 U.S. at 168.

[31] *Id*., 553 U.S. at 169.

[32] *Id*., 553 U.S. at 170.

[33] See *Virginia v. Moore, supra* note 15.

[34] *Id*., 453 U.S. at 174.

The Court pointed to a prior case, *Whren v. United States*,[35] wherein it held that the police had acted reasonably, under the Fourth Amendment, in stopping a car, even though they lacked "authority" under state law to make the stop because they were in plainclothes in an unmarked vehicle.[36] It reiterated what it said in *Whren*—that the Fourth Amendment protections cannot vary from place to place and time to time in accordance with state laws governing "local law enforcement practices."[37] "[W]hen States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same."[38] To do otherwise would produce a vague and unpredictable constitutional regime "only as easy to apply as the underlying state law, and state law can be complicated indeed."[39]

## 2. Eighth Circuit

Applying *Moore* to an arrest by an off-duty Nebraska law enforcement officer, the Eighth Circuit Court of Appeals, in *Marksmeier*,[40] held that an arrest outside of the officer's power and authority pursuant to § 29-215, but with probable cause, does not violate the Fourth Amendment. In an action brought under "42 U.S.C. § 1983," the plaintiff in *Marksmeier* asserted that, pursuant to § 29-215(1), the arresting officer lacked the power and authority to effectuate the arrest.[41] The Eighth Circuit responded that it was unnecessary to decide whether the arresting officer was acting within his jurisdictional authority at the time of the arrest. It held that even if

---

[35] *Whren v. United States, supra* note 24.

[36] *Id*., 517 U.S. at 172.

[37] *Id*.

[38] *Id*., 517 U.S. at 173.

[39] *Id*., 517 U.S. at 175.

[40] *Marksmeier v. Davie, supra* note 16.

[41] *Id*. at 897.

the arrest violated Nebraska law, it did not violate the Fourth Amendment, as it was supported by probable cause.[42]

A similar result was reached by the Eighth Circuit in *Rose v. City of Mulberry, Arkansas*.[43] The court held that the arrest by an Arkansas officer who was acting outside of his jurisdiction in violation of state law did not violate the Fourth Amendment, because the officer had probable cause to detain and arrest the driver after witnessing the driver commit a traffic violation.

### 3. OTHER STATE AND FEDERAL DECISIONS

Several other state and federal courts have likewise held that a stop supported by reasonable suspicion, or an arrest supported by probable cause, does not violate the Fourth Amendment, even if the officer acted outside of the officer's statutory jurisdiction.[44]

For example, the First Circuit Court of Appeals, in *U.S. v. Ryan*,[45] held that the Fourth Amendment does not require the exclusion of evidence gathered after an arrest made outside of a federal law enforcement officer's statutory jurisdiction. The court explained that "an officer . . . arrest[ing] an obviously intoxicated driver just outside that officer's territorial jurisdiction, after a lawful traffic stop, is 'not remotely' akin

---

[42] *Marksmeier v. Davie, supra* note 16.

[43] *Rose v. City of Mulberry, Arkansas*, 533 F.3d 678 (8th Cir. 2008).

[44] See, *U.S. v. Ryan*, 731 F.3d 66 (1st Cir. 2013); *U.S. v. Jones*, 701 F.3d 1300 (10th Cir. 2012); *U.S. v. Goings*, 573 F.3d 1141 (11th Cir. 2009). See, also, *U.S. v. Castleman*, 795 F.3d 904 (8th Cir. 2015); *State v. Barton*, 669 S.W.3d 661 (Mo. 2023); *Westra v. Iowa Dept. of Transportation*, 929 N.W.2d 754 (Iowa 2019); *State v. Gates*, 145 So. 3d 288 (La. 2014); *State v. Morris*, 92 A.3d 920 (R.I. 2014); *State v. Jones*, 121 Ohio St. 3d 103, 902 N.E.2d 464 (2009); *State v. Smith*, 154 N.H. 113, 908 A.2d 786 (2006); *People v. Hamilton*, 465 Mich. 526, 638 N.W.2d 92 (2002), *abrogated on other grounds, Bright v. Ailshie*, 465 Mich. 770, 641 N.W.2d 587; *People v. Wolf*, 635 P.2d 213 (Colo. 1981) (en banc); 1 Charles E. Torcia, Wharton's Criminal Procedure § 59 (13th ed. 1989).

[45] *U.S. v. Ryan, supra* note 44.

to the invasions of privacy that might call for the exclusion of evidence [under the Fourth Amendment]."[46]

The Supreme Court of Ohio, in *State v. Jones*,[47] similarly held that the fact that the officer conducting the stop of the defendant was outside his jurisdiction and his reasons for being there were "irrelevant to the Fourth Amendment analysis."[48] Instead, the "sole focus of the inquiry should [be] on the stop itself."[49]

The Supreme Court of Michigan, in *People v. Hamilton*,[50] also held that the fact that an arrest was made outside of the officer's jurisdiction in violation of state law did not require exclusion of the evidence obtained after the arrest. "The Fourth Amendment exclusion rule," explained the court, "applies to constitutionally invalid arrests, not merely statutorily illegal arrests."[51]

### 4. NEBRASKA CASE LAW

*Cuny* was decided by this court before the U.S. Supreme Court's decision in *Moore* and the Eighth Circuit's decision in *Marksmeier*.[52] And we did not discuss in *Cuny* why the "unlawful" nature of the stop and arrest, due to it being beyond the officers' jurisdictional authority, made the evidence obtained therefrom a violation of the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution.

In *Cuny*, we cited to *State v. Masat*,[53] decided in 1992, wherein we conducted a very similar analysis. After discussing that the officer lacked territorial jurisdiction under either

---

[46] *Id.* at 70.

[47] *State v. Jones, supra* note 44.

[48] *Id.* at 107-08, 902 N.E.2d at 468.

[49] *Id*. at 108, 902 N.E.2d at 468.

[50] *People v. Hamilton, supra* note 44.

[51] *Id.* at 532-33, 638 N.W.2d at 96.

[52] See *State v. Cuny, supra* note 7. See, also, *Virginia v. Moore, supra* note 15; *Marksmeier v. Davie, supra* note 16.

[53] *State v. Masat*, 239 Neb. 849, 479 N.W.2d 131 (1992).

statutory or common law to stop the defendant's vehicle outside the city limits, we held in *Masat* that the trial court erred in failing to suppress the evidence derived from the arrest of a driver for DUI. We said, "Evidence obtained as the fruit of an illegal search or arrest, in violation of the fourth amendment to the U.S. Constitution and the provisions of article I, § 7, of the Nebraska Constitution, is inadmissible in a prosecution in this state and must be excluded."[54] We did not examine why the lack of jurisdictional authority is cognizable under the Fourth Amendment and the identical provision of the Nebraska constitution.

In *Masat*, we relied on *State v. Tingle*,[55] decided the year before. In *Tingle*, after determining that the officer's arrest of the defendant was beyond the officer's "geographical jurisdiction"[56] under state law, both statutory and common law, we cited to the general proposition that evidence obtained as the fruit of an illegal search or seizure, in violation of the Fourth amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution, is inadmissible in a state prosecution and must be excluded. We then held, without further discussion or citation to authority, that "the arrest was constitutionally illegal and that the trial court was clearly wrong in not suppressing all evidence obtained subsequent to such arrest."[57]

In *Tingle*, we cited to *State v. Knudsen*[58] for the proposition that "[a]lthough the illegality of the arrest in question gives rise to collateral rights and remedies such as the exclusionary rule,"[59] it is not a defense to the crime. In *Knudsen*, however, we made no reference to the exclusionary rule. We affirmed

---

[54] *Id.* at 852, 479 N.W.2d at 133.

[55] *State v. Tingle*, 239 Neb. 558, 477 N.W.2d 544 (1991).

[56] *Id.* at 563, 477 N.W.2d at 548.

[57] *Id.* at 566, 477 N.W.2d at 550.

[58] *State v. Knudsen*, 201 Neb. 584, 270 N.W.2d 926 (1978).

[59] *State v. Tingle, supra* note 55, 239 Neb. at 566, 477 N.W.2d at 550.

a conviction for DUI after the defendant was stopped and arrested by a police officer allegedly acting outside of the city limits beyond which he had no authority to act. The defendant contended that the arrest was illegal because the officer had no authority to make an arrest beyond the city limits and, therefore, the judgment should be reversed. We said it was unnecessary to determine if the arrest was "illegal" because "the validity of the arrest was of no consequence so far as the prosecution for the offense was concerned."[60] We continued, "Although the illegality of an arrest may give rise to other collateral rights and remedies, it ordinarily is not a defense to the crime for which the arrest was made."[61]

The Legislature adopted 1994 Neb. Laws, L.B. 254, § 1, now codified at § 29-215, in response to the effect of the holding in *Tingle*.[62] There is no case before *Tingle* discussing the admissibility of evidence derived from a stop or arrest conducted by a law enforcement officer outside of that officer's territorial jurisdiction. The Court of Appeals' decision in *Ohlrich*[63] is the only case in Nebraska decided after *Moore* and *Marksmeier* on this issue, but *Ohlrich* discussed neither case, nor *Cuny*, in reaching its conclusion that the trial court did not err in suppressing the evidence obtained following the defendant's arrest that was effectuated by an officer's acting outside of his statutory jurisdiction. Likewise, the opinion presented little reasoning to support its holding.

Our case law holding that the Fourth Amendment and the corresponding provision of the Nebraska Constitution is implicated by the admission of evidence from an "illegal" stop or arrest outside an officer's territorial jurisdiction appears based on a misunderstanding of the nature and scope of the Fourth Amendment, which has since been clarified by

---

[60] *State v. Knudsen, supra* note 58, 201 Neb. at 585, 270 N.W.2d at 926.

[61] *Id*.

[62] See *State v. Connick*, 5 Neb. App. 176, 557 N.W.2d 713 (1996).

[63] *State v. Ohlrich, supra* note 4. See, also, *State v. Langan*, 6 Neb. App. 739, 577 N.W.2d 752 (1998).

*Moore*.[64] We have never indicated an intent to provide greater constitutional protections than those given under the Fourth Amendment to stops and arrests effectuated outside of a law enforcement officer's territorial jurisdiction.

[6] We overrule *Tingle*[65] and its progeny to the extent those cases hold that a violation of state law limitations to the territorial jurisdiction of law enforcement officers implicates the Fourth Amendment and article I, § 7, of the Nebraska Constitution. A law enforcement officer's jurisdictional power and authority to make a stop or arrest is irrelevant to the admissibility, under the Fourth Amendment and article I, § 7, of the Nebraska Constitution, of the evidence obtained from the stop or arrest.

## 5. Application

Thus, regardless of Rockwell's jurisdictional power and authority under § 29-215 to have conducted the stop and arrest of Hoehn, since there is no dispute that the stop was supported by reasonable suspicion and the arrest was supported by probable cause, the exclusionary rule applicable to violations of the Fourth Amendment and article I, § 7, of the Nebraska Constitution does not apply to the fruits of the stop. These constitutional provisions were the sole basis for Hoehn's objection to the evidence at trial. Accordingly, the county court did not err in denying Hoehn's motion to suppress brought under the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution.

We find no merit to the State's contention that the Court of Appeals erred in determining whether Rockwell was acting outside of his jurisdictional power and authority when he stopped and arrested Hoehn, because Hoehn did not adequately raise this issue to the county court. Assuming without deciding that the jurisdictional authority of Rockwell was not presented to or passed upon by the county court, it was clearly

---

[64] See *Virginia v. Moore, supra* note 15.

[65] *State v. Tingle, supra* note 55.

decided by the district court. And the State did not cross-appeal the district court's decision, but instead invited the Court of Appeals to address § 29-215. Furthermore, the State conceded at oral arguments before the Court of Appeals that Hoehn had adequately raised § 29-215 to the county court.

[7,8] If an appellee wants the appellate court to review an allegedly erroneous determination made by the district court sitting as an appellate court, it should cross-appeal to preserve the issue.[66] Furthermore, a party cannot complain of an error the party invited the court to commit.[67]

The State cannot now complain that the Court of Appeals addressed § 29-215 simply because it does not like its interpretation of the statute. We express no opinion, however, as to the correctness of the Court of Appeals' interpretation of § 29-215, because it is not necessary to our holding in this appeal.

## VI. CONCLUSION

Because a lack of territorial authority under state law in making a stop or arrest does not implicate the Fourth Amendment or article I, § 7, of the Nebraska Constitution, we affirm the decision of the Court of Appeals, which affirmed the district court's decision affirming Hoehn's conviction and sentence in the county court based on the admission of the evidence obtained from the stop and arrest.

Affirmed.

---

[66] See *State v. Jennings*, 308 Neb. 835, 957 N.W.2d 143 (2021).

[67] See, *Nebraska Republican Party v. Shively*, 311 Neb. 160, 971 N.W.2d 128 (2022); *Seid v. Seid*, 310 Neb. 626, 967 N.W.2d 253 (2021).